# EXHIBIT A

| | |
|---|---|
| Ray E. Gallo (SBN 158903)<br>rgallo@gallo.law<br>Dominic R. Valerian (SBN 240001)<br>dvalerian@gallo.law<br>Nathaniel M. Simons (SBN 319065)<br>nsimons@gallo.law<br>GALLO LLP<br>1604 Solano Ave., Suite B<br>Berkeley, CA 94707<br>Phone: 415.257.8800<br><br>Attorneys for Plaintiffs | FILED<br>ALAMEDA COUNTY<br><br>OCT 04 2018<br><br>CLERK OF THE SUPERIOR COURT<br>By _____ Deputy |

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| ALICIA CAPPELLO and CATHERINE MOSQUEDA, for themselves and all others similarly situated,<br><br>    Plaintiffs,<br>vs.<br><br>WALMART, INC., a Delaware corporation; and DOES 1-50, inclusive,<br><br>    Defendants. | Case No. RG18923367<br><br>**CLASS ACTION**<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF BASED ON:<br><br>1. VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT (18 U.S.C. § 2710)<br><br>2. VIOLATION OF CAL. CIV. CODE. § 1799.3<br><br>3. VIOLATION OF THE UNFAIR COMPETITION LAW (CAL. BUS. & PROF CODE § 17200 ET SEQ.)<br><br>**DEMAND FOR JURY TRIAL** |

Page 1
**COMPLAINT**

## NATURE OF ACTION

1. Plaintiffs Alicia Cappello and Catherine Mosqueda bring this class action against Walmart, Inc. ("Walmart") for violating the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA") and Cal. Civ. Code § 1799.3 by disclosing walmart.com customers' identities and video media purchases to Facebook, Inc. ("Facebook").

2. The VPPA prohibits "video tape service providers" like Walmart from knowingly disclosing consumers' personally-identifiable information, including "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider," without express written consent in a stand-alone consent form.

3. Cal. Civ. Code § 1799.3 prohibits video sellers from disclosing "any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual."

4. Walmart installed an advertising tool called a Facebook pixel on its retail website walmart.com that systematically disclosed to Facebook: (1) walmart.com customers' Facebook ID's, and (2) the Walmart product ID's of the products those customers purchased.

5. When a walmart.com customer purchased a DVD, Blu-ray Disc, video game, or other video media (all jointly "Video Media"), this disclosure to Facebook violated the VPPA and Cal. Civ. Code § 1799.3 because it identified the consumer to Facebook as having requested or obtained specific video materials from Walmart.

6. Walmart knew it was disclosing and intended to disclose Video Media purchasers' personal information to Facebook based on, among other things, the functionality of the pixel, including its enablement of individually targeted advertising based on the specific products specific customers purchased on walmart.com. Walmart installed the pixel for this purpose. Walmart also knew the requirements of the VPPA. Walmart nevertheless failed to obtain the requisite express written consent of the customer in a separate stand-alone consent form beforehand.

7. Plaintiffs seek an injunction prohibiting Walmart's unlawful disclosures,

Page 2

**COMPLAINT**

mandatory liquidated damages of $2,500 per violation, and punitive damages under the VPPA, a civil penalty of up to $500 per violation under Cal. Civ. Code § 1799.3, and attorneys' fees.

### Parties

8. Plaintiffs are individuals who purchased Video Media from walmart.com and never authorized Walmart to disclose their Video Media purchase information to Facebook.

9. Plaintiff Alicia Cappello is an individual who at all relevant times resided in Bakersfield, California. Plaintiff Catherine Mosqueda is an individual who at all relevant times resided in Yreka, California.

10. Defendant Walmart, Inc. is a Delaware corporation with its principal place of business in Bentonville, Arkansas.

11. Plaintiffs are unaware of the true identities of those Defendants sued herein as DOES 1 through 50, inclusive, and therefore sue these Defendants by these fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to show the true names and capacities of the fictitiously named Defendants if and when ascertained. Plaintiffs are informed and believe that each fictitiously named Defendant is liable in some manner for the injuries and damages alleged by Plaintiffs.

### Venue and Jurisdiction

12. This Court has general subject matter jurisdiction. Further, the applicable walmart.com terms of use provide that "[a]ny action or proceeding arising out of or related to this Agreement or your use of the Walmart Sites must be brought in the state or federal courts of California and you consent to the exclusive personal jurisdiction of such courts."

13. Venue is proper in this county under Code of Civil Procedure § 395 because Defendant does not reside in California and has not designated a California county in which it maintains its principal local office[1] and may therefore be sued in the county designated by Plaintiffs in their complaint. *See Easton v. Sup.Ct. (Schneider Bros., Inc.)*, 12 Cal. App. 3d 243,

---

[1] *See* California Secretary of State Statement of Information for Walmart Inc., filed January 9, 2018, available at https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=01634374-23491937 as of August 1, 2018 (omitting Principal California Office address).

**COMPLAINT**

1 | 246-247 (1970).

**Facts Common to All Causes of Action**

14. Walmart operates the retail websites walmart.com and mobile.walmart.com (together "walmart.com"), where it sells a variety of consumer goods, including Video Media.

15. To take advantage of advertising and information services offered by Facebook, Walmart programmed walmart.com to include a Facebook pixel that automatically discloses the Walmart product ID of all products purchased on walmart.com, including Video Media, to Facebook.

16. A Facebook pixel is an analytics tool that tracks consumers' actions on Facebook advertisers' websites and reports them to Facebook. For an advertiser to incorporate a Facebook pixel into its website, the advertiser must add the code for the pixel to its website. To obtain the code for the pixel, the advertiser tells Facebook which website events it wants to track (e.g. purchases, additions to cart, product views) and Facebook returns corresponding Facebook pixel code for the advertiser to incorporate into its website.

17. Walmart set up its Facebook pixel to track, among other things, the Walmart product ID of products purchased on walmart.com, including Video Media. A Walmart product ID is a unique identifier assigned to each Walmart product that returns the name of the associated product when searched for via walmart.com or Google. Generally, when a consumer with a Facebook account purchases Video Media from walmart.com the purchase confirmation page loads and the Facebook pixel on that page causes the purchaser's browser to send the purchased Video Media's product ID, and the consumer's Facebook user ID, to Facebook's servers through a message called a "GET Request."[2]

18. The GET Request to Facebook includes the contents of any non-expired Facebook "cookies" stored on the user's computer. A cookie is a small file sent from a website and stored on the user's computer by the user's web browser while the user is browsing. Multiple Facebook cookies enable Facebook to identify the user associated with the GET request, including a

---

[2] A "GET Request" is a message sent from a web browser to a server, requesting information for display on the computer or device.

Page 4

**COMPLAINT**

"c_user" cookie that contains the user's Facebook ID. A Facebook ID is a unique and persistent identifier that Facebook assigns to each user. With it, anyone can (or during the relevant time frame, could) look up the user's Facebook profile and name.

19. When a Facebook user with one or more personally-identifiable Facebook cookies on his or her browser purchases Video Media from walmart.com, Walmart, through its website code, causes the purchaser's identity and Video Media purchases to be transmitted to Facebook by the user's browser. This transmission is not the purchaser's decision, but results from Walmart's purposeful use of its Facebook tracking pixel by incorporation of that pixel and code into walmart.com. Walmart easily could program walmart.com so that this information is not automatically transmitted to Facebook when a customer purchases Video Media.

20. At all relevant times, Walmart knew that the Facebook pixel disclosed customers' identities and purchases to Facebook. This was evident from, among other things, the functionality of the pixel, including that it enabled Walmart.com to show targeted advertising to its customers based on the products those customers had previously purchased on walmart.com, including Video Media purchases. This targeting capability demonstrates Facebook's and Walmart's intended purpose and practice of combining Facebook ID's and product ID's to identify which users purchased which products. Representative statements from Facebook to advertisers like Walmart describing the targeting and matching functions the Pixel enables include:

    a. "Using the Facebook Pixel—a snippet of code you install on your website—you can create a custom audience of people who have visited your website. You can even use the website traffic data to show people ads for things they've shown interest in on your website."[3]

    b. "When someone visits your website and takes an action (for example, buying something), the Facebook pixel is triggered and reports this action. This way, you'll know when a customer took an action after seeing your Facebook ad. You'll also be able to reach this

---

[3] Facebook Business, https://www.facebook.com/business/learn/facebook-ads-reach-existing-customers# (last verified by counsel for plaintiff on Jan. 31, 2018).

1 customer again by using a custom audience."[4]

2     c. "One great way to reach real people is with Custom Audiences from your
3 website. These identify people with Facebook ID's who have visited specific product pages or
4 added products to a cart. Once a Custom Audience pixel is placed on your website, you can use
5 that data to remarket to visitors across all their devices."[5]

6     d. "The Facebook pixel has an advanced matching feature that enables you to
7 send your customer data through the pixel to match more website actions with Facebook users.
8 With this additional data, you can report and optimize your ads for more conversions and build
9 larger re-marketing audiences. You can pass the customer identifiers, such as email, phone number
10 that you collect from your website during the checkout, account sign-in, or registration process as
11 parameters in the pixel. Facebook then uses this information to match pixel events with Facebook
12 users when the Facebook cookie is not present on the browser that fires the pixel."[6]

13     21. Walmart continues to engage in all of the unlawful conduct alleged herein, so
14 Plaintiffs and the general public face continuing, present, adverse effects and likelihood of future
15 injury from Walmart's conduct.

16 **Plaintiffs**

17     22. Plaintiff Alicia Cappello purchased "Prometheus" on Blu-Ray and "Alien
18 Covenant" on Blu-Ray from walmart.com on or about September 23, 2017, using an internet-
19 enabled device. Cappello purchased "Jeepers Creepers" on Blu-Ray from walmart.com on or
20 about November 24, 2017, using her internet-enabled device. At the time of each purchase,
21 Plaintiff Cappello was logged into her Facebook account on that same device. Consequently,
22 Plaintiff Cappello's personally-identifiable video purchase information, including her Facebook
23 ID and the Walmart product ID of the purchased Video Media were disclosed to Facebook
24 pursuant to the systematic processes described above.

---

[4] Facebook Business, https://www.facebook.com/business/learn/facebook-ads-pixel (last verified by counsel for plaintiff on Jan. 31, 2018).
[5] Facebook Business, https://www.facebook.com/business/a/performance-marketing-strategies (last verified by counsel for plaintiff on Jan. 31, 2018).
[6] Facebook for Developers, https://developers.facebook.com/docs/facebook-pixel/pixel-with-ads/conversion-tracking (last verified by counsel for plaintiff on Jan. 31, 2018).

23. Plaintiff Catherine Mosqueda purchased "Independence Day Resurgence" on Blu-Ray and DVD, "Star Trek Beyond" on Blu-Ray and DVD, and "Finding Dory" on Blu-Ray and DVD from walmart.com on or about November 24, 2016, using her internet-enabled device. Mosqueda purchased "The Land Before Time: Complete Collection" on Blu-Ray, from walmart.com on or about November 26, 2017, using her internet-enabled device. She purchased "UNCHARTED: The Nathan Drake Collection" and "LEGO: Jurassic World" video games for Playstation 4 from walmart.com on or about November 24, 2017, using her internet-enabled device. At the time of each purchase, Plaintiff Mosqueda was logged into her Facebook account on that same device. Consequently, Plaintiff Mosqueda's personally-identifiable video purchase records information, including her Facebook ID and the Walmart product ID of the purchased Video Media were disclosed to Facebook pursuant to the systematic processes described above.

24. Plaintiffs never gave Walmart any written consent to disclose their Video Media purchases to Facebook, let alone the consent required by the VPPA, *i.e.*, written consent in a form distinct and separate from any form setting forth their other legal or financial obligations.

25. Plaintiffs and the proposed classes face a threat of imminent or actual harm because, *inter alia*, they cannot make an informed decision about whether to purchase Video Media from Walmart in the future without knowing whether Walmart has ceased its unlawful practices.

### Class Action Allegations

26. Pursuant to Code of Civil Procedure Section 382, Plaintiffs bring this action for themselves and the following class (the "Class"):

> All persons in the United States who purchased Video Media from walmart.com within the two years immediately preceding the filing of this action and before November 28, 2017 in a transaction that resulted in the Video Media's Walmart product ID and the purchaser's Facebook ID being sent to Facebook.

27. Plaintiffs seek certification of the following subclass (the "California Subclass"):

> All persons in California who purchased Video Media from walmart.com between within the applicable statutory limitations period and before November 28, 2017 in a transaction that resulted in the Video Media's Walmart product ID and the purchaser's

Page 7
**COMPLAINT**

Facebook ID being sent to Facebook.

28. Excluded from the Class and California Subclass are: (1) all officers and directors of Walmart and its parents, subsidiaries, and affiliates, and (2) all judges assigned to hear any aspect of this litigation and their immediate family members.

29. Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

30. <u>Numerosity</u>: The potential members of the Class and California Subclass are so numerous that joinder of all the members of the class is impracticable. Plaintiffs are informed and believe that the Class and California Subclass each includes at least thousands of members.

31. <u>Commonality</u>: There are questions of law and fact common to the Class that predominate over any questions affecting only individual members of the Class, including:

    a. What information Walmart disclosed to Facebook concerning Class members' Video Media purchases;

    b. Whether the information Walmart disclosed to Facebook concerning Class members' Video Media purchases constitutes personally-identifiable information under the VPPA;

    c. Whether Walmart's disclosure of Class members' personally-identifiable information to Facebook was knowing under the VPPA;

    d. Whether Class members consented to Walmart's disclosure of their personally-identifiable information to Facebook in the manner required by 18 U.S.C. § 2710(b)(2)(B); and

    e. Whether the Class is entitled to damages as a result of Walmart's conduct.

32. There are questions of law and fact common to the California Subclass that predominate over any questions affecting only individual members of the California Subclass, including:

    a. Whether the information Walmart disclosed to Facebook concerning California Subclass members' Video Media purchases constitutes "personal information or the contents of any record, including sales or rental information, which is prepared or maintained by" Walmart;

Page 8
**COMPLAINT**

   b. Whether Walmart's disclosure of California Subclass members' personal information or record contents to Facebook was willful under Cal. Civ. Code § 1799.3(c);

   c. Whether California Subclass members provided written consent to Walmart's disclosure of their personal information or record contents to Facebook; and

   d. Whether the Class is entitled to civil penalties under Cal. Civ. Code § 1799.3(c) as a result of Walmart's conduct.

  33. <u>Typicality</u>: Plaintiffs' claims are typical of Class members' and California Subclass members' claims because Plaintiffs each purchased Video Media from walmart.com in transactions that resulted in the Video Media's product ID's and purchaser's Facebook ID being sent to Facebook without the requisite consent.

  34. <u>Adequacy of Representation</u>: Plaintiffs are all members of the Class and California Subclass, Plaintiffs' interests do not conflict with the interests of other Class members, and Plaintiffs' counsel are competent and experienced in litigating consumer class actions.

  35. <u>Superiority of Class Action</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class or California Subclass members is not practicable, and questions of law and fact common to the Class and California Subclass predominate over any questions affecting only individual members of the Class. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

  36. Injunctive relief is necessary to prevent further unlawful conduct by Walmart. Money damages, alone, could not provide adequate and complete relief. Injunctive relief is necessary to restrain Walmart from continuing to commit its illegal and unfair violations of privacy.

**First Cause of Action**
**Violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710**
**(Against all Defendants, on behalf of Plaintiffs and the Class)**

  37. Plaintiffs incorporate all preceding paragraphs as though repeated here.

  38. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to any person without the

Page 9

**COMPLAINT**

"informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C § 2710.

39. Walmart is a "video tape service provider" as defined in 18 U.S.C. §2710(a)(4) because it is engaged in the business of selling and delivering audiovisual materials that are similar to prerecorded video cassette tapes including, without limitation, DVDs and Blu-ray Discs, and those sales affect interstate or foreign commerce.

40. All Plaintiffs and Class members are "consumers" as defined in 18 U.S.C. §2710(a)(1) because they purchased goods from Walmart.

41. Walmart knowingly disclosed personally-identifiable information concerning Plaintiffs and Class members to Facebook, including their Facebook ID's and the Walmart product ID's of the Video Media that each respective Class member purchased.

42. This information constitutes personally-identifiable information under 18 U.S.C. §2710(a)(3) because it identified each Plaintiff and Class member to Facebook as an individual who requested or obtained named Video Media from Walmart.

43. Walmart knew that these disclosures identified Plaintiffs and Class members to Facebook as individuals having requested or obtained specific Video Media from Walmart because, *inter alia*, Walmart chose, programmed, and intended for Facebook to receive the Walmart product ID's of the products customers purchased on walmart.com and Walmart understood that Facebook could then, to advance Walmart's business purposes and otherwise, serve targeted ads to individuals based on the products they purchased, which necessarily required Facebook to know which customers purchased which products. Plaintiffs are informed and believe that Walmart knew its disclosures identified Plaintiffs and Class members to Facebook as individuals having requested or obtained specific video materials from Walmart for other reasons that are known to Walmart and are not publicly available.

44. Plaintiffs and Class members did not provide to Walmart and Walmart did not otherwise obtain their informed written consent, in a form distinct and separate from any form setting forth their other legal or financial obligations, to disclose Plaintiffs' and Class members' Video Media purchases to Facebook.

**COMPLAINT**

## Second Cause of Action
## Violation of Cal. Civ. Code. § 1799.3
### (On Behalf of Plaintiffs and the California Subclass)

45. Plaintiffs incorporate all preceding paragraphs as though repeated here.

46. Cal. Civ. Code § 1799.3(a) prohibits a "person providing video recording sales" from disclosing "any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual."

47. Walmart is a "person providing video recording sales or rental services" under Cal. Civ. Code § 1799.3(a) because it is engaged in the business of selling video recordings, including, without limitation, DVDs, Blu-ray Discs, and video games.

48. Walmart willfully disclosed information that identified Plaintiffs and California Subclass members to Facebook as individuals having requested or obtained specific video materials from Walmart, including their Facebook ID's and the Walmart product ID's of the Video Media that they purchased. This information constitutes: (a) the personal information of Plaintiffs and California Subclass members, and/or (b) the contents of a record concerning Plaintiffs and California Subclass members that Walmart prepared or maintained.

49. Plaintiffs and California Subclass members did not consent, in writing or otherwise, to Walmart's disclosure of their Video Media purchases to Facebook. Walmart's disclosure of this information to Facebook therefore violated Cal. Civ. Code § 1799.3(a).

## Third Cause of Action
## Violation of Cal. Business & Professions Code. § 17200, *et seq.*
### (On Behalf of Plaintiffs and the California Subclass)

50. Plaintiffs incorporate all preceding paragraphs as though repeated here.

51. California Business and Professions Code § 17200 *et seq.*, the Unfair Competition Law ("UCL"), prohibits unfair, unlawful, and fraudulent business practices.

52. Walmart violated the UCL's unlawful prong by, among other things:

    a. Disclosing personally-identifiable information concerning Plaintiffs and Class members to Facebook, including their Facebook ID's and the Walmart product ID's of the Video Media that each respective Class member purchased, without the requisite consent, in

Page 11

**COMPLAINT**

violation of 18 U.S.C § 2710;

   b. Disclosing Plaintiffs' and California Subclass members' personal information and the contents of records prepared or maintained by Walmart concerning Plaintiffs and California Subclass members to Facebook without written consent in violation of Cal. Civ. Code § 1799.3(a).

 53. Walmart's UCL violations resulted in the loss of money or property to Plaintiffs in that Walmart's systematic and unlawful disclosure of Plaintiffs' video purchasing data to Facebook diminished the value of the Video Media that Plaintiffs purchased to a level below the prices Plaintiffs paid for it. Plaintiffs would not have paid Walmart as much—or would not have paid Walmart at all—for the Video Media had Walmart required consent to the disclosure of their purchasing data (as required by law) as a condition of the sale.

## Prayer for Relief

**WHEREFORE,** Plaintiffs and the Class pray for relief and judgment as follows:

1. For public injunctive relief under the VPPA requiring Walmart to stop disclosing Facebook ID's and Walmart product ID's to Facebook when consumers purchase Video Media on walmart.com.

2. For public injunctive relief under the UCL requiring Walmart to stop disclosing Facebook ID's and Walmart product ID's to Facebook when consumers in California purchase Video Media on walmart.com.

3. For liquidated damages of at least $2,500 per violation to each Plaintiff and Class member pursuant to 18 U.S.C. § 2710(c)(2)(A).

4. For an award of punitive damages to each Plaintiff and Class member pursuant to 18 U.S.C. § 2710(c)(2)(B).

5. For a civil penalty not to exceed $500 per violation to each Plaintiff and California Subclass member pursuant to Cal. Civ. Code § 1799.3(c).

6. For attorney's fees and expenses pursuant to all applicable laws including, without limitation, 18 U.S.C. § 2710(c)(2)(C) and Code Civ. Proc. § 1021.5.

7. For both pre- and post-judgment interest on any amounts awarded.

8. For such other and further relief as the Court deems just and proper.

//

DATED: October 4, 2018               **RESPECTFULLY SUBMITTED,**

                                                GALLO LLP

By: _____
Ray E. Gallo

## DEMAND FOR JURY TRIAL

Plaintiffs and each of them, for themselves and all others similarly situated, hereby demand a jury trial of all issues, claims, and causes of action so triable.

DATED: October 4, 2018

RESPECTFULLY SUBMITTED,

GALLO LLP

By: _____
Ray E. Gallo