COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
WHITTY SOMVICHIAN (194463) (wsomvichian@cooley.com)
KYLE C. WONG (224021) (kwong@cooley.com)
MAXWELL E. ALDERMAN (318548) (malderman@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

Attorneys for Defendant
WALMART INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ALICIA CAPPELLO and CATHERINE MOSQUEDA, for themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART, INC., a Delaware corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.  4:18-cv-06678-SBA<br><br>**WALMART INC.'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFFS' COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    February 13, 2019<br>Time:    2:00 p.m.<br>Judge:   Hon. Saundra B. Armstrong |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF. WALMART INC.'S MOTION TO DISMISS
PLFS' COMPLAINT
CASE NO. 4:18-CV-06678-SBA

**Table of Contents**

**Page**

I.   INTRODUCTION ................................................................................................................. 2

II.  BACKGROUND .................................................................................................................. 3

    A.   Walmart's Terms of Use, Privacy Policy, and Notices ............................................. 3

    B.   Plaintiffs' Allegations ................................................................................................ 4

    C.   Procedural History .................................................................................................... 5

III. ARGUMENT ........................................................................................................................ 5

    A.   Plaintiffs' Section 1799.3 Claim Should Be Dismissed Because Plaintiffs Gave "Written Consent" to the Disclosures Alleged in the Complaint ....................... 5

    B.   Plaintiffs' VPPA Claim Also Fails Because Walmart's Consent Process Complies with All Applicable Requirements under VPPA ......................................... 7

    C.   Plaintiffs Did Not Suffer Any Economic Injury from Walmart's Alleged Disclosures and Have No Standing to Pursue a UCL Claim ....................................... 9

IV.  CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amtower v. Photon Dynamics, Inc.*,
    158 Cal. App. 4th 1582 (2008) ..................................................................................................5

*Backhaut v. Apple, Inc.*,
    74 F. Supp. 3d 1033 (N.D. Cal. 2014) .....................................................................................11

*Bower v. AT&T Mobility, LLC*,
    196 Cal. App. 4th 1545 (2011) ................................................................................................11

*Crawford v. Beachbody, LLC*,
    No. 14-cv-1583, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ..................................................5

*In re Google Inc. Street View Elec. Commc'ns Litig.*,
    794 F. Supp. 2d 1067 (N.D. Cal. 2011) ...................................................................................10

*Ingels v. Westwood One Broad. Servs., Inc.*,
    129 Cal. App. 4th 1050 (2005) ..................................................................................................9

*In re iPhone Application Litig.*,
    No. 11-md-2250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........................................2, 10

*Kirch v. Embarq Mgmt. Co.*,
    No. 10-cv-2047, 2011 WL 3651359 (D. Kan. Aug. 19, 2011) ..................................................7

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ...............................................................................................................9

*Mortensen v. Bresnan Commc'n, LLC*,
    No. 10-cv-0013, 2010 WL 5140454 (D. Mont. Dec. 13, 2010) ............................................ 7-8

*Ruiz v. Gap, Inc.*,
    540 F. Supp. 2d 1121 (N.D. Cal. 2008) .....................................................................................9

*St. Paul Mercury Ins. Co. v. Am. Safety Indem. Co.*,
    No. 12-cv-5952, 2014 WL 2120347 (N.D. Cal. May 21, 2014) ................................................5

*Svenson v. Google Inc.*,
    65 F. Supp. 3d 717 (N.D. Cal. 2014) .......................................................................................10

*Svenson v. Google Inc.*,
    No. 13-cv-4080, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ................................................10

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) .......................................................................................5

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

DEF. WALMART INC.'S MOTION TO DISMISS
PLFS' COMPLAINT
CASE NO. 4:18-CV-06678-SBA

*Van Patten v. Vertical Fitness Grp., LLC,*
    847 F.3d 1037 (9th Cir. 2017) ...................................................................................................9, 11

*In re Yahoo Mail Litig.,*
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ..............................................................................................7

**Statutes**

Video Privacy Protection Act, 18 U.S.C § 2710 ........................................................................... *passim*

Cal. Bus. & Prof Code § 17200, *et seq.* ....................................................................................... *passim*

Cal. Civ. Code § 1799.3(a) ............................................................................................................ *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .....................................................................................1, 3

S. R<small>EP</small>. No. 112-258 (2012) .................................................................................................................8

C<small>OOLEY</small> LLP
A<small>TTORNEYS</small> A<small>T</small> L<small>AW</small>
S<small>AN</small> F<small>RANCISCO</small>

iii.

**D<small>EF</small>. W<small>ALMART</small> I<small>NC</small>.'<small>S</small> M<small>OTION TO</small> D<small>ISMISS</small>
P<small>LFS</small>' C<small>OMPLAINT</small>
C<small>ASE</small> N<small>O</small>. 4:18-<small>CV</small>-06678-SBA**

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on February 13, 2019, or as soon thereafter as the motion may be heard at the U.S. District Court, courtroom to be assigned 5 days prior to the hearing date, located at 1301 Clay St., Oakland, CA, pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant Walmart Inc. ("Walmart") will and hereby does move to dismiss the causes of action in plaintiffs Alicia Cappello and Catherine Mosqueda's ("Plaintiffs") Complaint filed in California state court on October 4, 2018 and removed to this Court on November 11, 2018 (ECF No. 1-2) ("Complaint" or "Compl."). This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing of the Motion. Walmart also respectfully requests that the Court take judicial notice of the documents attached as Exhibits A-E to the Declarations of Kanthi Santhikumar ("Santhikumar Decl."), Caitlin Brown ("Brown Decl."), and Suzanne Cole ("Cole Decl.") each in Support of Walmart's Motion to Dismiss.

**CERTIFICATION**

Walmart certifies that it met and conferred with Plaintiffs' counsel prior to filing this Motion and the accompanying Request for Judicial Notice, pursuant to Judge Armstrong's Civil Standing Order.

**STATEMENT OF RELIEF SOUGHT**

Walmart seeks an order dismissing with prejudice the Complaint's causes of action under the Video Privacy Protection Act, 18 U.S.C. Section 2710 ("VPPA"), California Civil Code Section 1799.3 ("Section 1799.3"), and California Business and Professions Code Sections 17200, *et. seq.* ("Unfair Competition Law" or "UCL") for failure to state a claim upon which relief can be granted.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Plaintiffs' claim under Section 1799.3 should be dismissed, where Plaintiffs gave express consent to Walmart's alleged disclosures of information by agreeing to Walmart's Terms of Use ("TOU") and Privacy Policy.

2. Whether Plaintiffs can pursue a VPPA claim, where Walmart's method of obtaining

Cooley LLP
Attorneys At Law
San Francisco

1.

DEF. WALMART INC.'S MOTION TO DISMISS
PLFS' COMPLAINT
CASE NO. 4:18-CV-06678-SBA

consent complies with the specific provisions of the statute.

3.  Whether Plaintiffs' UCL claim should be dismissed, where Plaintiffs do not allege economic injury resulting from the alleged disclosures of their transactions.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  INTRODUCTION**

Walmart moves to dismiss the Complaint because Plaintiffs expressly consented to the alleged disclosures of information that they complain of and have suffered no loss of money or property or other harm. As such, their claims fail as a matter of law and the Complaint should be dismissed in its entirety. First, Plaintiffs have no viable claim under VPPA and Section 1799.3 because they gave "written consent" for Walmart to make the disclosures alleged in the Complaint. 18 U.S.C. § 2710(b)(2)(B); Cal. Civ. Code § 1799.3(a). As part of making the purchases at issue, Plaintiffs expressly agreed to Walmart's TOU and Privacy Policy, which explain (among other relevant disclosures) that "Walmart uses how you browse and shop to show you ads that are more relevant to you" and can share such information with "service providers that help with [Walmart's] business activities," specifically including Facebook.[1] Plaintiffs' Complaint neglects to mention that they expressly agreed to these terms, which constitute "written consent" precluding their claims under both Section 1799.3 and VPPA.

Second, Plaintiffs have no standing to pursue a claim under the UCL. Under established law, a plaintiff must show that he or she suffered an *economic* injury by having "lost money or property as a result of the [alleged] unfair competition," in order to bring a UCL claim. Cal. Bus. & Prof Code § 17204. The purported "unfair competition" here—the alleged disclosure of Plaintiffs' video purchases to Facebook—did not deprive Plaintiffs of any "money or property" for purposes of UCL standing. Indeed, courts have consistently held in analogous cases that the disclosure of private information does not create standing under the UCL. *See, e.g.*, *In re iPhone Application Litig.*, No.

---

[1] The relevant terms are discussed and attached to Walmart's Request for Judicial Notice ("RJN") and the accompanying Declarations of Kanthi Santhikumar, Caitlin Brown, and Suzanne Cole in support thereof. As further explained in the RJN, Walmart's terms are publicly available documents on the internet capable of ready and accurate determination, which are relevant to Plaintiffs' claims and/or incorporated by Plaintiffs in their Complaint.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

DEF. WALMART INC.'S MOTION TO DISMISS
PLFS' COMPLAINT
CASE NO. 4:18-CV-06678-SBA

11-md-2250, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011).

For these reasons, the Court should dismiss the VPPA claim, as well as both of the California statutory claims as a matter of law and with prejudice.

## II. BACKGROUND[2]

### A. Walmart's Terms of Use, Privacy Policy, and Notices.

Defendant Walmart operates the website walmart.com through which it sells various consumer goods, including DVD movies and video games. In order to make a purchase on walmart.com, a customer must first click to agree to Walmart's TOU and Privacy Policy, which incorporates other publicly-available Walmart policies like its Notices (collectively, "Terms"). (Santhikumar Decl. at ¶ 3; Cole. Decl. at ¶ 3; *see also* Ex. A ("By clicking Place Order, you agree to Walmart's Updated Privacy Policy and Terms of Use.").)

Below, Walmart provides a selection from a screenshot of the relevant and publicly-available Walmart "purchase confirmation page," the complete version of which is Exhibit A:

> By clicking Place Order, you agree to Walmart's Updated Privacy Policy and Terms of Use.   **Place Order**

Throughout the relevant period of the Complaint, the Terms have consistently informed prospective customers that Walmart may use customers' "personal information" to "personalize our offerings to you," including showing "advertisements . . . that are tailored to your interests." (Brown Decl. at ¶ 4; Ex. B at 5, 8; Ex. C at 5, 8). As Walmart explains, the information used to show personalized ads can include "how you browse and shop" on walmart.com. (Brown Decl. at ¶ 6; Ex. D at 18.) Walmart also discloses that it may "share personal information" about its customers with "service providers" to "improve . . . products and services." (Brown Decl. at ¶ 4; Ex. B at 7; Ex. C at 6.) Additionally, Walmart states that it belongs to "ad networks" that can show "interest-based advertising" to Walmart's customers. (Brown Decl. at ¶ 4; Ex. B at 10-11; Ex. C at 10.) Walmart further discloses that personalized advertising can be shown to Walmart's customers on the Facebook

---

[2] As it must under Federal Rule of Civil Procedure 12(b)(6), Walmart takes the allegations of the Complaint as true for purposes of this Motion only.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

DEF. WALMART INC.'S MOTION TO DISMISS
PLFS' COMPLAINT
CASE NO. 4:18-CV-06678-SBA

platform. (Brown Decl. at ¶ 6; Ex. D at 18 (referring to "Other websites where you see our ads, such as Facebook . . . .").) Walmart thus makes clear to customers that it can disclose a customer's purchase transactions to third parties like Facebook in order to deliver relevant advertising to customers, and it requires customers to agree to these Terms before completing a purchase on Walmart.com.

### B. Plaintiffs' Allegations.

Plaintiffs allege that they purchased various DVDs, Blu-Ray discs, and video games ("Video Media") on the Walmart website on November 24, 2016, September 23, 2017, and November 24, 2017. (Compl. ¶ 22-23.) When Plaintiffs made these purchases, they were required to click to agree to Walmart's Terms, as discussed above. (Santhikumar Decl. at ¶ 4.). Plaintiffs appear to be well aware of Walmart's Terms and, in fact, specifically rely on the Terms in their Complaint. (Compl. ¶ 12 ("Further, the applicable walmart.com terms of use provide . . .").)[3]

Plaintiffs allege that Walmart violated various federal and state statutes by disclosing their purchases of Video Media to Facebook. (*Id.* at ¶ 1, 5, 17.) Specifically, Plaintiffs claim that Walmart used an "analytics tool" called a "Facebook Pixel," which enabled information on Plaintiffs' purchases to be transmitted to Facebook. (*Id.* at ¶ 16-17.) Plaintiffs do not allege that this transmission of information violated the Terms. To the contrary, they concede that information about their purchases was allegedly transmitted to Facebook in order to "optimize [Walmart's] ads" and for other business purposes. (*Id.* at ¶ 20.)

Plaintiffs claim that Walmart's use of the Facebook Pixel violates VPPA, Section 1799.3, and the UCL.

### C. Procedural History

Plaintiffs filed their original Complaint on October 4, 2018 in the Superior Court of the State of California for the County of Alameda. (Compl. ¶ 1.) Walmart timely removed to this Court on November 2, 2018 and the parties stipulated that Walmart would respond to the Complaint on December 14, 2018. (*See* Stipulated Extension of Time, ECF No. 11.)

---

[3] As further shown in Walmart's Request for Judicial Notice, Plaintiffs have expressly incorporated these binding Terms into the Complaint.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.

DEF. WALMART INC.'S MOTION TO DISMISS
PLFS' COMPLAINT
CASE NO. 4:18-CV-06678-SBA

## III. ARGUMENT

### A. Plaintiffs' Section 1799.3 Claim Should Be Dismissed Because Plaintiffs Gave "Written Consent" to the Disclosures Alleged in the Complaint.

By its terms, Section 1799.3 imposes no liability where an individual gives "written consent" to an alleged disclosure of information. Cal. Civ. Code § 1799.3(a). Here, Plaintiffs' Section 1799.3 claim fails as a matter of law because they expressly agreed to Walmart's Terms and thus consented to the practices alleged in the Complaint.

Like many other online shopping websites, consumers who purchase through walmart.com must first click to agree to Walmart's Terms before completing a purchase, as discussed above. This common form of online agreement constitutes binding acceptance of the terms and disclosures that are presented to the consumer, as courts have consistently held. *See, e.g.*, *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911 (N.D. Cal. 2011) (finding that a plaintiff had consented to defendant's terms where she "click[ed] on an 'Accept' button directly above a statement that clicking on the button served as assent to [defendant's] terms of service along with a blue hyperlink directly to the terms of service"); *Crawford v. Beachbody, LLC*, No. 14-cv-1583, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (holding that online terms are enforceable "where the user is provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I Accept' button and clicks that button.") (citations omitted).

Here, Plaintiffs expressly agreed, when they made each of their purchases, that information about those purchases could be used as outlined in Walmart's Terms.[4] Specifically, Plaintiffs agreed and consented that:

---

[4] Walmart expressly incorporates its Privacy Policy into its TOU, noting that "[y]ou acknowledge that any personal information you provide through the Walmart Sites will be used by Walmart in accordance with Walmart's Privacy Policy at http://corporate.walmart.com/privacy-security/walmart-privacy-policy, the terms of which are incorporated here by this reference." (Cole Decl. at ¶ 2; Ex. E.) Under California law, incorporation by reference requires clear and unequivocal reference "to the fact that the terms of the external document are incorporated." *Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1608 (2008); *see also St. Paul Mercury Ins. Co. v. Am. Safety Indem. Co.*, No. 12-cv-5952, 2014 WL 2120347, at *9 (N.D. Cal. May 21, 2014) (noting that terms of incorporation by reference "must guide the reader to the incorporated document") (internal quotation and citation omitted). Walmart more than meets this standard.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

DEF. WALMART INC.'S MOTION TO DISMISS
PLFS' COMPLAINT
CASE NO. 4:18-CV-06678-SBA

- **Walmart can use a consumer's "personal information" to provide its "products and services," which includes "personalize[d] . . . advertising."** (Brown Decl. at ¶ 4; Ex. B at 5-6; Ex. C at 5-6 ("We use your personal information to provide you products and services, such as . . . to help us personalize our offerings to you. Some examples include: . . . To help us personalize our service offerings, websites, mobile services, and advertising"); *see also* Brown Decl. at ¶ 4; Ex. B at 8; Ex. C at 8 ("We also personalize your experience on our sites and mobile services by showing you advertisements that are tailored to your interests.").)

- **Walmart shares "personal information" with third parties to help Walmart improve its "products and services."** (Brown Decl. at ¶ 4; Ex. B at 7; Ex. C at 6 ("We share personal information about you with service providers that help with our business activities, including . . . companies that help us improve our products and services.").)

- **The "personal information" used to show personalized ads specifically includes "how you browse and shop" on Walmart.** (Brown Decl. at ¶ 6; Ex. D at 18 ("Walmart uses how you browse and shop to show you ads that are more relevant to you . . . .").)

- **Walmart is part of "ad networks" that show "interest based advertisements."** (Brown Decl. at ¶ 4; Ex. B at 10-11; Ex. C at 10 ("We belong to ad networks that may use your browsing history across participating websites and mobile services to show you interest-based advertisements.").)

- **Walmart's personalized ads appear on Facebook.** (Brown Decl. at ¶ 6; Ex. D at 18 ("Some websites where we advertise belong to ad networks that use your web browsing history to choose which ads to display on their network websites . . . *Other websites where you see our ads, such as Facebook*, may use interest preferences that you have chosen on those sites, as well as registration and other information about you, to choose which ads to display to you.") (emphasis added).

Taken together, these disclosures put users on notice that their purchases on walmart.com can be disclosed to Facebook in order to show personalized ads to the user on Facebook's social network. By expressly agreeing that information about their purchase could be used in this way, Plaintiffs gave

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

DEF. WALMART INC.'S MOTION TO DISMISS
PLFS' COMPLAINT
CASE NO. 4:18-CV-06678-SBA

"written consent" that precludes their claim under Section 1799.3 as a matter of law.

### B. Plaintiffs' VPPA Claim Also Fails Because Walmart's Consent Process Complies with All Applicable Requirements under VPPA.

Plaintiffs' VPPA claim fails for similar reasons because VPPA also exempts from liability disclosures of information that are made with the "written consent" of the consumer. 18 U.S.C. § 2710(b)(2)(B). While VPPA includes provisions regarding consent that are not contained in Section 1799.3, Walmart's process for obtaining consent meets all of these statutory requirements.

*First*, under 18 U.S.C. Section 2710, subsection (b)(2)(B)(i) of VPPA, consent must be "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer." That is, a "form" used to obtain consent cannot include "other legal or financial obligations of the consumer." Here, Walmart obtains consent by requiring click-through agreement to its Privacy Policy, which is a "distinct and separate" document that explains how Walmart uses consumer information.[5] The Privacy Policy satisfies subsection (b)(2)(B)(i) because it does not set forth "other legal or financial obligations of the consumer." In fact, it does not impose obligations on the consumer at all and simply explains how Walmart uses consumer data.

Walmart's consent process is no different from the way many online retailers and other websites obtain consent to their privacy practices. Indeed, numerous courts have recognized that a click-through agreement to a privacy policy is a valid way to meet the consent provisions of other statutes. *See, e.g.*, *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028-29 (N.D. Cal. 2014) (finding that the consent defense under the Wiretap Act applied because users "explicitly consented" to Yahoo's practices by clicking to agree to Yahoo's Terms of Service); *Kirch v. Embarq Mgmt. Co.*, No. 10-cv-2047, 2011 WL 3651359, at *7-8 (D. Kan. Aug. 19, 2011) (dismissing ECPA claim were plaintiff had clicked to agree to terms including the defendant's Privacy Policy); *Mortensen v. Bresnan Commc'n, LLC*, No. 10-cv-0013, 2010 WL 5140454, at *3-5 (D. Mont. Dec. 13, 2010) (finding that statutory

---

[5] To the extent that the "distinct and separate" requirement refers to the consumer's act of consent (as opposed to the disclosures on which consent is based) Walmart's purchase process complies because Walmart requires a "distinct and separate" act of consent (a click-through agreement to its Privacy Policy) for each purchase before the order can be placed.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

DEF. WALMART INC.'S MOTION TO DISMISS
PLFS' COMPLAINT
CASE NO. 4:18-CV-06678-SBA

consent defense applied based on the plaintiffs' agreement to the defendant's privacy policy and other posted notices). Congress must have had this common consent process in mind when it amended VPPA in 2012 to clarify that consent can be obtained "through an electronic means using the Internet." 18 U.S.C. § 2710(b)(2)(B).

***Second***, Walmart's consent process complies with 18 U.S.C. Section 2710, subsection (b)(2)(B)(ii), which requires that consent either be "given at the time the disclosure is sought" or be "given in advance for a set period of time . . . ." *See* 18 U.S.C. §§ 2710(b)(2)(B)(ii)(I) & (II). Here, Walmart's process is designed to obtain consent "at the time disclosure is sought." As alleged in the Complaint, a consumer's purchase of Video Media is disclosed to Facebook when the purchase is completed and the "purchase confirmation page loads." *See* Compl. ¶ 17 (alleging that the disclosure of data to Facebook occurs "when a consumer with a Facebook account purchases Video Media from walmart.com the purchase confirmation page loads" ); *see also id.* at ¶ 5 (alleging that disclosures occurred "[w]hen a walmart.com customer purchased a DVD, Blu-Ray Disc, video game, or other video media."). Walmart requires consumers to agree to its Terms immediately before that point when placing an order on walmart.com. Walmart thus obtains consent "at the time the disclosure is sought" for purposes of subsection (b)(2)(B)(ii)(I).

18 U.S.C. Section 2710, subsection (b)(2)(B)(ii)(II) regarding obtaining consent "in advance" is inapplicable here because Plaintiffs do not allege (nor could they) that Walmart makes *ongoing* disclosures of a consumers' video purchases *after* the initial transaction. As context, Congress added subsection (b)(2)(B)(ii)(II) to VPPA to give more flexibility in how companies obtain consent, providing the option to obtain consent a single time that covers ongoing disclosures for a future period. *See* S. REP. No. 112-258, at 3 (2012) (explaining that the 2012 amendment to VPPA was "to allow consumers to provide their informed, written consent to disclose [their] video viewing information—if they wish—one time in advance"). Walmart has not availed itself of this option and instead obtains a separate and distinct act of consent for each transaction on walmart.com that (under Plaintiffs' allegations) can trigger a disclosure to Facebook.

***Third***, 18 U.S.C. Section 2710, subsection (b)(2)(B)(iii) is also inapplicable because it imposes additional requirements for "withdrawing" consent that are not relevant to Walmart's

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.

DEF. WALMART INC.'S MOTION TO DISMISS
PLFS' COMPLAINT
CASE NO. 4:18-CV-06678-SBA

process. Subsection (b)(2)(B)(iii) relates to and builds on (b)(2)(B)(ii): if an entity seeks consent "in advance for a set period of time" under B(ii), it must also "provide[] an opportunity . . . for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures" altogether. Here, Walmart does not seek to obtain consent "in advance" to make ongoing disclosures in the future. Rather, it gives the consumer the option to agree or decline agreement to the Privacy Policy for each transaction that triggers an alleged disclosure.

Walmart's consent process thus complies with VPPA in all respects and Plaintiffs' VPPA claim fails as a matter of law.

### C. Plaintiffs Did Not Suffer Any Economic Injury from Walmart's Alleged Disclosures and Have No Standing to Pursue a UCL Claim.

In order to bring a UCL claim, Plaintiffs must allege facts showing (1) that they suffered "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury" and (2) "that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011) (emphasis omitted). This requirement of an economic injury is inherently "'more restrictive than federal injury in fact' because it encompasses fewer kinds of injuries." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048-49 (9th Cir. 2017) (citation omitted). Here, Plaintiffs allege that Walmart violated the "unlawful" prong of the UCL by disclosing their personal information to Facebook in violation of Section 1799.3 and VPPA.[6] Plaintiffs must therefore show that the alleged disclosure of their purchase information caused them to suffer a loss of "money or property."

Multiple courts, however, have recognized that the alleged improper disclosure of personal information is not an economic injury for purposes of UCL standing. *See, e.g., Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008) (the "unauthorized release of personal information" does not constitute a "loss of property" under the UCL), *aff'd Ruiz v. Gap*, 380 F. App'x 689 (9th Cir. 2010);

---

[6] Plaintiffs do not allege any UCL claim under the "fraudulent" or "unfair" prongs of the statute. (*See* Compl. ¶¶ 50-53.) Thus, even if Plaintiffs have satisfied the "economic injury" requirements needed for UCL standing, their claim must still be dismissed because the predicate of the "unlawful" conduct claim—the alleged violations of VPPA and Section 1799.3—fails as a matter of law for the reasons explained above. *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("A defendant cannot be liable under [Section] 17200 for committing unlawful business practices without having violated another law.") (internal quotation and citations omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9.

DEF. WALMART INC.'S MOTION TO DISMISS
PLFS' COMPLAINT
CASE NO. 4:18-CV-06678-SBA

*iPhone Application Litig.*, 2011 WL 4403963, at *14 (dismissing UCL claim based alleged improper access to private user information and explaining that "[n]umerous courts have held that a plaintiff's 'personal information' does not constitute money or property under the UCL"); *In re Google Inc. Street View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067, 1086 (N.D. Cal. 2011) (dismissing UCL claim involving interception of private communications because "data packets that a plaintiff has sent over a wireless network are not lost property for purposes of determining [UCL] standing"). *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 730 (N.D. Cal. 2014) is instructive. In *Svenson*, the plaintiff alleged that when she purchased certain mobile applications from the Google Play Store, Google improperly disclosed her personal information to the third-party app developers in violation of the Stored Communications Act. *Id.* The *Svenson* court ruled that these allegations did not support UCL standing because "[d]efendants' [alleged] business practice—disclosing users' Contact Information to third-party App vendors" did not cause plaintiff to "change[] her economic position at all." *Id.*[7] Rather, "Plaintiff alleges that she purchased an App for $1.77 and received that App.," therefore, "Plaintiff has not alleged facts showing that she suffered any damages resulting from that transaction." *Id.* Similarly here, Plaintiffs allege that Walmart improperly disclosed their transactions to Facebook, but that alleged privacy violation cannot support a UCL claim because Plaintiffs received the DVDs they paid for and did not suffer any economic harm from the transaction. (Compl. ¶¶ 22-23.)

Plaintiffs allege in passing that they might not have paid as much for their items if Walmart had "required consent to the disclosures of their purchasing data . . . ." (Compl. ¶ 53.) But this effort to manufacture UCL standing fails for multiple reasons. First, a plaintiff must demonstrate economic injury that is "concrete and particularized" and may not rely on "conjectural or hypothetical" harm. *Van Patten*, 847 F.3d at 1049 (quoting *Kwikset*, 51 Cal. 4th at 322-23 (internal quotation and citations omitted)). Plaintiffs' conclusory assertion fails under these standards. Indeed, Plaintiffs' allegation is framed as a conjecture on its face. *See* Compl. ¶ 53 (alleging that Plaintiffs "would not have paid

---

[7] The *Svenson* plaintiff later amended her complaint to state an economic injury under the UCL by alleging that Google had breached its privacy policy and she therefore did not receive the benefit of the bargain. *Svenson v. Google Inc.*, No. 13-cv-4080, 2015 WL 1503429, at *8-9 (N.D. Cal. Apr. 1, 2015). Plaintiffs have not made any similar allegation here. Nor could they, since Plaintiffs expressly agreed to Walmart's Terms, which specifically authorize the alleged disclosures. *See supra* III.A.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

DEF. WALMART INC.'S MOTION TO DISMISS
PLFS' COMPLAINT
CASE NO. 4:18-CV-06678-SBA

Walmart as much" "or would not have paid Walmart at all," without specifying Plaintiffs' purported harm in concrete terms). Such hypotheses of loss hardly meet the UCL's standing requirement. *See Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1554-55 (2011) (reasoning that plaintiffs' meager allegations did not adequately plead an injury under the UCL). Second, Plaintiffs' allegation rings hollow because Walmart ***did*** require Plaintiffs to consent to Walmart's Terms in connection with their transactions, as discussed above. Despite agreeing that information on their purchases could be used as explained in Walmart's Terms, Plaintiffs still paid the full purchase price for their DVDs. Indeed, courts have rejected similar claims of economic injury. For example, in *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1048 (N.D. Cal. 2014), the plaintiffs alleged that they suffered an economic injury by "overpaying for their Apple devices" because Apple did not disclose how text messaging would work on their devices. The court rejected this theory of UCL standing because the plaintiff did not allege reliance on any purported misleading statement by Apple. *Id.* at 1047-49. Similarly here, Plaintiffs make no allegation that they were somehow misled into making their purchases; nor could they, given their express agreement to Walmart's Terms, which specifically explain how user information can be used.

## IV.    CONCLUSION

For all these reasons, Walmart requests that the Court dismiss the Complaint in its entirety with prejudice.

Dated:      December 14, 2018          COOLEY LLP
                                       MICHAEL G. RHODES (116127)
                                       WHITTY SOMVICHIAN (194463)
                                       KYLE C. WONG (224021)
                                       MAXWELL E. ALDERMAN (318548)

                                       */s/ Whitty Somvichian*
                                       Whitty Somvichian (194463)
                                       Attorneys for Defendant
                                       WALMART INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

DEF. WALMART INC.'S MOTION TO DISMISS
PLFS' COMPLAINT
CASE NO. 4:18-CV-06678-SBA