Ray E. Gallo (SBN 158903)
rgallo@gallo.law
Dominic Valerian (SBN 240001)
dvalerian@gallo.law
GALLO LLP
1604 Solano Ave., Suite B
Berkeley, CA 94707
Phone: 415.257.8800

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALICIA CAPPELLO and CATHERINE MOSQUEDA, for themselves and all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>WALMART, INC., a Delaware corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 18-CV-06678-RS<br><br>Hon. Richard Seeborg<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:          February 21, 2019<br>Time:          1:30 PM<br>Courtroom 3, 17th Floor |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

# TABLE OF CONTENTS

1. Statement of Issues to Be Decided ........................................................................... 4

2. Introduction and Summary of Argument ................................................................ 5

3. Statement of Relevant Facts ................................................................................... 6

4. Argument ................................................................................................................. 8

    A.  Plaintiffs did not consent to Walmart's disclosure of their Video Media purchases to Facebook for advertising purposes ........................................................................ 8

        (1) Walmart's Privacy Policy indicates that personal information will only be shared with third parties (outside Walmart's family of companies) that facilitate Walmart's delivery of goods and services to the consumer ........................................ 9

        (2) Walmart promised to share information with third parties for direct advertising purposes only on an opt-in basis ............................................................................... 12

        (3) Plaintiffs did not give written consent to Walmart's "Notices" and, in any event, their terms could not establish consent .................................................................. 13

    B.  Walmart failed to obtain Plaintiffs' informed written consent in the manner the VPPA requires ................................................................................................................... 15

        (1) Walmart failed to obtain Plaintiffs' consent "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer" ............ 15

        (2) Walmart failed to provide an opportunity for Plaintiffs to: (a) withdraw their purported consent on a case-by-case basis, or (b) withdraw from ongoing disclosures ........................................................................................................... 16

    C.  Plaintiffs' allegations establish standing under the UCL ...................................... 18

        (1) Plaintiffs lost money or property by paying more, or getting less, than they would have but for Walmart's failure to comply with its statutory obligations ................... 18

        (2) These allegations further establish injury in fact ....................................... 20

5. Conclusion ............................................................................................................ 22

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

# TABLE OF AUTHORITIES

## Cases

*Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582 (2008)................................................ 13

*Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796  (2006) ..................................................... 20

*Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033 (2014) .............................................. 11, 21

*Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545 (2011)...................................................... 21

*Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014) ................................................. 11

*In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014)........................... 19, 20

*In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ............................................................................................................. 19

*In re Google Inc. Gmail Litig.*, No. 13-MD-02430- LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .............................................................................................................................. 9

*In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........................................................................................................................... 9, 11

*In re Google Inc. Street View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067 (N.D. Cal. 2011).... 19

*In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .............................................................................................................................. 19

*In re Pharmatrak, Inc.*, 329 F.3d 9 (1st Cir. 2003) ............................................................. 9

*In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............... 19, 20

*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......................................... 9

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018)..... 19

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ................................................... 18, 20

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ........................................... 20

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ..................................... 14

*Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121 (N.D. Cal. 2008) ................................................ 19

*Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) ................................................... 8

*Svenson v. Google Inc.*, 65 F. Supp. 3d 717 (N.D. Cal. 2014)............................................. 19

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) ................................. 20

## Statutes

18 U.S.C. § 2511 ........................................................................................................... 8, 9

18 U.S.C. § 2710 ...................................................................................................... *passim*

Cal. Bus. & Prof. Code § 17200 ............................................................................... *passim*

Cal. Civ. Code § 1799.3 ............................................................................................ *passim*

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    Statement of Issues to Be Decided

A.    Do the disclosures in Walmart's Privacy Policy, Terms of Use, and Notices establish Plaintiffs' consent to Walmart's disclosure of their personally identifiable video media purchases to Facebook for targeted advertising purposes where: (a) the disclosures say nothing about Walmart sharing customers' personally identifiable purchase information with other companies for advertising purposes, (b) the disclosures say that Walmart will not share customers' personal information with unaffiliated companies for their use in direct marketing except on an opt-in basis, and (c) Plaintiffs never opted in?

B.    Did Walmart obtain Plaintiffs' informed written consent in the manner the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA") requires? Specifically:

1)    Does the form that Walmart used to obtain Plaintiffs' purported consent—consisting of a checkout page with a "Place Order" button that, when clicked, places the customer's order and purportedly binds the customer to the numerous legal and financial obligations set forth: (a) on the checkout page, (b) in Walmart's Privacy Policy (15 pages), and (c) in walmart.com's Terms of Use (19 pages)—satisfy the VPPA's requirement that the consumer's informed written consent be obtained "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer"?

2)    Walmart tacitly admits it did not provide an opportunity, in a clear and conspicuous manner, for Plaintiffs: (a) to withdraw their purported consent on a case-by-case basis, or (b) to withdraw from ongoing disclosures—as required for valid consent under the VPPA. Was Walmart required to comply with this VPPA requirement in its video media sales to Plaintiffs where the VPPA provides no exceptions to this requirement and any consent Walmart obtained authorized ongoing disclosures?

C.    Do Plaintiffs' allegations—that but for Walmart's failure to comply with its obligations under the VPPA and Cal. Civ. Code § 1799.3 they would not have paid Walmart as much or at all for their video media purchases—constitute a loss of money or property and injury in fact under the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (the "UCL")?

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

## 2.      Introduction and Summary of Argument

Unbeknownst to Plaintiffs, Walmart, Inc. ("Walmart") systematically disclosed their identities and personally identifiable DVD, Blu-Ray disc, and video game ("Video Media") purchases on walmart.com to Facebook for advertising purposes using a tracking pixel that Walmart purposely installed on its website. These acts violated Plaintiffs' statutory privacy rights, specifically the VPPA's and California Civil Code Section 1799.3's prohibitions on disclosing personally identifiable video purchase information to third parties without proper consent.

It is the public policy of the United States of America and the State of California to prohibit such invasions of privacy, and to grant statutory damages to victims whose private video purchasing decisions are shared without their knowing consent. Plaintiffs seek those damages here. Walmart moves to dismiss on the grounds that Plaintiffs consented to its disclosures and have not lost money or property, but each of Walmart's contentions lacks merit.

First, Plaintiffs did not consent to Walmart's disclosures at all, and therefore have claims under both the VPPA and Cal. Civ. Code § 1799.3. Most of the terms Walmart relies on say nothing about Walmart disclosing customers' personal information to third parties. The only provision that discloses Walmart's sharing of personal information with companies outside its corporate family, absent the customer's opt-in consent, does not advise that such disclosures include Video Media purchases, are made for advertising purposes, or go to third parties like Facebook. Those provisions seek authorization only for disclosures to companies providing services that facilitate Walmart's delivery of goods and services to its customers, not for advertising or promotional purpose. And, as detailed below, more specific provisions of Walmart's Privacy Policy state that Walmart does *not* engage in the type of disclosures alleged here but instead only shares customer information with unaffiliated companies for their direct marketing purposes on an opt-in basis. A reasonable walmart.com would not understand Walmart's' disclosures to authorize Walmart to disclose her personally identifiable Video Media purchases to Facebook for advertising purposes. As a matter of law, Walmart's disclosures do not constitute consent.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

Second, even if Walmart's forms could constitute consent, Walmart failed to obtain Plaintiffs' informed written consent in the form and manner the VPPA requires.

Rather than being in "a form distinct and separate from any form setting forth other legal or financial obligations of the consumer" (as Subsection (b)(2)(B)(i) of the VPPA requires), Plaintiffs' purported consent (a single click) incorporates and purportedly provides consent: (a) to the entirety of Walmart's checkout page, (b) to Walmart's linked Privacy Policy (15 pages), and (c) to Walmart's linked Terms of Use (19 pages). Together, these three documents span 35 pages and set forth numerous legal and financial obligations of the consumer beyond any purported consent to the disclosure of personally identifiable Video Media purchase information.

Walmart also failed to provide an opportunity, in a clear and conspicuous manner, for Plaintiffs to: (a) withdraw their purported consent on a case-by-case basis, or (b) withdraw from ongoing disclosure (as Subsection (b)(2)(B)(iii) of the VPPA requires). Nowhere does Walmart disclose that customers have a right to withdraw consent to Walmart sharing their personally identifiable Video Media purchases with third parties. Walmart's contention that this requirement does not apply contravenes the VPPA's patent lack of exceptions to this requirement. Congress, in passing the Video Privacy Protection Act, clearly intended to grant consumers the right to keep their video media purchases private.

Third, Plaintiffs allege they "would not have paid Walmart as much—or would not have paid Walmart at all—for the Video Media had Walmart required consent to the disclosure of their purchasing data (as was required by law) as a condition of the sale." Compl. ¶ 53. As alleged, Plaintiffs got less, or paid more, than they otherwise would have. This harm constitutes lost money or property and injury in fact under the UCL per the applicable caselaw.

## 3.     Statement of Relevant Facts

Plaintiffs purchased Video Media on walmart.com on November 24, 2016, September 23, 2017, November 24, 2017, and November 26, 2017. Compl. ¶¶ 22-23. Concurrently with each such purchase, Walmart disclosed Plaintiffs' identities and Video Media purchases to Facebook. *Id*. ¶¶ 19, 22, 23. Walmart did this using an analytics tool (a bit of code) called a Facebook pixel that Walmart programed into walmart.com "to take advantage of advertising and information

services offered by Facebook," including the ability to show Walmart customers targeted ads based on their walmart.com purchases. *Id.* ¶¶ 6, 15, 16, 20. Walmart never obtained Plaintiffs' written consent to disclose their Video Media purchases to Facebook at all, let alone in the informed and separate manner that the VPPA requires. *Id.* ¶ 24.

Plaintiffs allege that Walmart's disclosures of their personally identifiable Video Media purchases "diminished the value of their Video Media that Plaintiffs purchased to a level below the prices Plaintiffs paid for it" and that Plaintiffs "would not have paid Walmart as much—or would not have paid Walmart at all—for the Video Media had Walmart required consent to the disclosure of their purchasing data (as required by law) as a condition of sale." *Id.* ¶ 53.

Walmart's evidence indicates that Plaintiffs completed their purchases on walmart.com by clicking a "Place Order" button that appeared on the purchase confirmation page as follows:



Decl. of Kanthi Santhikumar ("Santhikumar Decl.") ¶¶ 2-4, Exh. A.[1] The underlined terms "Privacy Policy" and "Terms of Use" were hyperlinks to Walmart's then-applicable Privacy Policy and Terms of Use. Santhikumar Decl. ¶ 3.

Walmart's Terms of Use are 19 pages long. Its Privacy Policy is 15 pages long. Decl. of Suzanne Cole ("Cole Decl.") Ex. E; Decl. of Caitlin Brown ("Brown Decl.") Exs. B-C. Each of these documents contains numerous provisions unrelated to the disclosure of personally identifiable Video Media purchases. Neither says anything about Walmart's (systematic) disclosure of personally identifiable purchase information to any advertiser. Neither says anything about Plaintiffs' rights under applicable law not to consent or to opt-out of such disclosures. *Id.* Neither informs Plaintiffs of their rights under the VPPA.

The "Notices" Walmart refers to are documents linked to Walmart's Privacy Policy (*i.e.*, they are two hyperlinks and many pages of reading removed from the purchase confirmation page where Plaintiffs clicked). Brown Decl. ¶ 5. They are not incorporated by reference into Walmart's

---

[1] Pinpoint citations to case documents are to the ECF-generated page numbers at the top of the documents.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

Privacy Policy. And nowhere do Plaintiffs agree to the terms of the Notices. The Notices contain multiple terms, none of which address disclosures to third parties, never mind state that Walmart will share personally identifiable purchase information with any advertiser. Brown Decl. Ex. D.

Plaintiffs allege Walmart's conduct violates the VPPA, Cal. Civ. Code § 1799.3, and the UCL's unlawful prong. Plaintiffs seek damages and allege that Walmart's unlawful practices continue, warranting injunctive relief. *Id*. ¶¶ 21, 36.

## 4.    Argument

### A.    Plaintiffs did not consent to Walmart's disclosure of their Video Media purchases to Facebook for advertising purposes

Subsections (b)(1) and (2) of the VPPA prohibit a video tape service provider from knowingly disclosing personally identifiable information concerning any consumer to any person without the consumer's "informed, written consent." 18 U.S.C. § 2710(b)(1)-(2). California Civil Code § 1799.3(a) similarly provides:

> No person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual.

"In determining consent, courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018). Although case law construing the VPPA's and Section 1799.3's consent exceptions is sparse, numerous courts have elaborated on the standard for consent under the federal Wiretap Act's analogous consent exception.[2] As the party seeking the benefit of the consent defense, and because Plaintiffs have pled that they did not consent to Walmart's disclosure of their Video Media purchases to Facebook (s*ee* Compl. ¶ 24), the burden is on Walmart to prove that it obtained consent. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028

---

[2] The Wiretap Act generally prohibits, among other things, the interception of "wire, oral, or electronic communications" without the prior consent of one of the parties to the communication. *See* 18 U.S.C. § 2511(1) and (2)(d).

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

(N.D. Cal. 2014) (citing *In re Pharmatrak, Inc.*, 329 F.3d 9, 19 (1st Cir. 2003)) (addressing consent under the Wiretap Act). Typically, the issue of consent cannot be resolved on a motion to dismiss as it "is usually a question of fact, where a fact-finder needs to interpret the express terms of any agreements to determine whether these agreements adequately notify individuals regarding the [alleged misconduct]." *In re Google Inc. Gmail Litig*., No. 13-MD-02430- LHK, 2014 WL 1102660, at *15 (N.D. Cal. Mar. 18, 2014) (addressing consent under the Wiretap Act). Going further than the Wiretap Act, the VPPA expressly requires, among other things, that consent be "informed." 18 U.S.C. § 2710 (b)(2)(B).

Thus, if a reasonable walmart.com user would not necessarily have understood Walmart's Privacy Policy and Terms of Use to authorize the disclosure of her Video Media purchases to Facebook for advertising purposes, Walmart cannot establish consent under either at-issue statute as a matter of law. *See, e.g., In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *11–14 (N.D. Cal. Sept. 26, 2013) (denying motion to dismiss Wiretap Act claim where reasonable user "would not have necessarily understood" Google's Terms of Service and Privacy Policies to authorize Google's alleged interceptions and uses of communications). Walmart's disclosures, at a minimum, fail to meet this standard. Indeed, even had Plaintiffs been well advised by a good lawyer they would not have understood from Walmart's disclosures that their personally identifiable Video Media purchase information would be shared with Facebook.

**(1)** *Walmart's Privacy Policy indicates that personal information will only be shared with third parties (outside Walmart's family of companies) that facilitate Walmart's delivery of goods and services to the consumer*

Under the heading "How Do We Use Your Personal Information?", Walmart's Privacy Policy states:

> We use your personal information to provide you products and services, such as to fulfill your requests for products or to help us personalize our offerings to you. We also use your personal information to support our business functions, such as fraud prevention, marketing, and legal functions.
>
> Some examples include: . . .

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

- To help us personalize our service offerings, websites, mobile services, and advertising . . . .

  To do this, we combine personal and non-personal information, collected online and offline, including information from third party sources. <u>We also transfer or share your personal information within our corporate family of companies, such as with Sam's Club, for these purposes, as permitted by law.</u>

Brown Decl. Ex. B at 6-7; Ex. C at 6-7 (emphasis added). These statements do not inform customers that Walmart discloses customers' personal information to third parties outside its corporate family of companies at all, much less that Walmart will disclose personally identifiable Video Media purchase information to Facebook for advertising purposes.

The closest thing to consent here is Walmart's statement that it uses personal information to "help personalize" advertising. But running personalized advertising does not require disclosing customers' personal information (much less personally identifiable Video Media purchase information) to any third parties. Walmart would not need to disclose purchase information to third parties to run targeted ads on Walmart.com or its other sites, or even to have third parties run targeted ads for it. To have third parties run targeted ads, Walmart presumably would just identify who it wanted what ads shown to. At most, an email address, IP address, or device identifier would be required to enable the targeting of an ad. There would be no need provide any advertising service with the targeted customer's purchase history.

Under the hearing "How Do We Share Your Personal Information Outside of Walmart?", Walmart's Privacy Policy states:

> <u>We will not share your personal information outside of our corporate family of companies, except in the following circumstances</u>:
>
> **Service Providers**
> We share personal information about you with service providers that help with our business activities, <u>including shipping vendors, billing and refund vendors, payment card processors, and companies that help us improve our products and services</u>. We require our service providers to keep your personal information secure. We do not allow our service providers to use or share your personal information for any purpose other than providing services on our behalf.

Brown Decl. Ex. B at 7-8; Ex. C at 7 (emphasis added).

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

This term does not notify the reasonable user that Walmart discloses consumers' identities and purchases to Facebook for advertising purposes. It says that Walmart will *not* do so. Facebook does not fit within any of the listed examples of service providers. Walmart repeatedly points to the example of "companies that help us improve our products and services." But Facebook is not such a company—advertising is not a product or service of Walmart.

The examples given are all providers of services that directly facilitate Walmart's provision of goods and services to consumers. Facebook's provision of targeted advertising services to Walmart, services intended to help generate new sales, differs fundamentally from these. A reasonable consumer would not understand this provision as including disclosures to Facebook. *See, e.g., Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1046 (2014) (consent for Apple to intercept messages for the purpose of facilitating delivery did not adequately notify reasonable users that Apple would also intercept messages when doing so would not facilitate delivery); *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *13 (term stating that "Google reserves the right … to pre-screen, review, flag, filter, modify, refuse or remove any or all Content from any Service," and describing steps users could take to avoid sexual and objectionable material, suggested that Google might intercept content to exclude objectionable material but did not establish consent for Google to intercept email to create user profiles or serve targeted ads).

Even if Facebook could be considered a "service provider" of the type enumerated in this provision, the disclosure is not specific enough to establish consent because it fails to notify customers of the content (personally identifiable Video Media purchase information), recipient (Facebook), or purpose (advertising) of the at-issue disclosures. *See, e.g., Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 846-47 (N.D. Cal. 2014) (Facebook's disclosures that "we receive data about you" when you "send or receive a message" and "may use the information we received about you" for "data analysis" were not specific enough to establish that users consented to the scanning of the content of their messages for alleged use in targeted advertising).

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

The only reasonable interpretation of Walmart's above-quoted promise, and certainly the most reasonable one, was and is that Walmart would not disclose personally identifiable purchase information to any advertiser, including Facebook.

**(2)**     *Walmart promised to share information with third parties for direct advertising purposes only on an opt-in basis*

Under the heading "What are Your Choices?", Walmart's Privacy Policy states:

> We also personalize your experience on our sites and mobile services by showing you advertisements from Walmart or our advertising partners that are tailored to your interests.

Brown Decl. Ex. B at 9; Ex. C at 9. In the same section, under the subheading "Marketing Preferences", Walmart's Privacy Policy states:

> When we are sending marketing communications to you, we use the following standards:
>
> • We use an opt-in standard for phone and text messages. <u>We use an opt-in standard for sharing personal information with companies outside our corporate family of companies for their use in direct marketing, such as sending you promotions. Opt-in means we will only conduct the activity with your affirmative consent</u> . . . .
>
> You can provide us with your marketing preferences by visiting our Communication Preferences & Alerts page . . . .

Brown Decl. Ex. B at 10; Ex. C at 9-10 (emphasis added).

In the same section, under the subheading "Internet-Based Advertising Preferences", Walmart's Privacy Policy states:

> We personalize your experience on our sites and mobile services by showing you advertisements that are tailored to your interests. For example, if you browse or shop for electronics with us or on other sites, we may show you ads for electronics as you continue to browse the Internet. For more information about browsing information see "*Information We Receive From You.*"
>
> We show you advertisements related to Walmart or our advertising partners. We belong to ad networks that may use your browsing history across participating websites and mobile services to show you interest-based advertisements. You may also see ads for Walmart on participating websites and mobile services based on how you browse. We do not share personal information about you with companies that advertise on our websites without your

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

1  consent. Learn more about interest-based advertising, including
   how to opt out.

2  Brown Decl. Ex. B at 11-12; Ex. C at 11.

3      Far from authorizing the challenged disclosures, these terms—specifically the underlined

4  language—prohibit Walmart from "sharing personal information with companies outside [its]

5  corporate family of companies for their use in direct marketing, such as sending you promotions"

6  without opt-in consent. Walmart's discussion of opt-in consent and its link to a Communication

7  Preferences & Alerts page where customers can provide their marketing preferences (can opt-in,

8  or not) make clear that opt-in consent means more than mere assent to the Privacy Policy.

9  Plaintiffs never opted in to Walmart sharing their personal information with Facebook.

10     That Walmart displays personalized advertisements to its customers or "belong[s] to ad

11 networks that may use [customers'] browsing history[ies] across participating websites and

12 mobile services to show [them] interest-based advertisements" does not notify consumers that

13 Walmart discloses its customers' identities, browsing histories, or purchases to third parties for

14 advertising purposes.

15 **(3)    *Plaintiffs did not give written consent to Walmart's "Notices" and, in any event, their***
16 ***terms could not establish consent***

17     Walmart also relies on statements in its "Notices" that are accessible (in the purchase

18 process, at least) only by a link on the 13th or 14th page of Walmart's Privacy Policy (two levels

19 removed from the page where Plaintiffs agreed to purchase Video Media from Walmart). Motion

20 to Dismiss ("Motion") at 10:20-25; Brown Decl. at ¶¶ 5-6; Ex. B at 15; Ex. C at 14; Ex. D). But

21 Plaintiffs never agreed in writing to Walmart's Notices, and those Notices were not incorporated

22 by reference into Walmart's Privacy Policy as there is no clear and unequivocal reference "to the

23 fact that the terms of the external document are incorporated." *See* Motion at 9 fn.4 (quoting

24 *Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1608 (2008)). Instead, Walmart's

25 Privacy Policy states, "[w]e have additional specific notices for our personal information

26 practices related to some of our specialized operations"—followed by several inapplicable

27 examples. Brown Decl. Ex. B at 15; Ex. C at 14. Plaintiffs had no notice that any of these Notices

28 applied to them, bound them, or touched on the privacy of their Video Media purchases.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

1    Accordingly, Plaintiffs did not provide written consent to the terms of the Notices and their terms

2    cannot satisfy the VPPA and Section 1799.3's written consent requirement.[3]

3            Moreover, the terms of those Notices could not establish consent. The Notices most

4    relevantly provide:

5                    Walmart uses how you browse and shop to show you ads that are
                     more relevant to you. For more information on how we use and
6                    share information, please see our Privacy Policy.

7                    Some websites where we advertise belong to ad networks that use
8                    your web browsing history to choose which ads to display on their
                     network websites; these ads include advertising for Walmart.
9                    Walmart only advertises with networks that are members of the
                     Network Advertising Initiative (NAI). Other websites where you
10                   see our ads, such as Facebook, may use interest preferences that
                     you have chosen on those sites, as well as registration and other
11                   information about you, to choose which ads to display to you.

12   Brown Decl. at ¶ 6; Ex. D at 18. This too does not say that Walmart discloses customers'

13   identities and purchases to third parties for advertising purposes. Walmart's identification of

14   Facebook as a place where it advertises omits any mention of Walmart disclosing customers'

15   personal information to Facebook, stating only that sites such as Facebook "may use interest

16   preferences that you have chosen on those sites, as well as registration and other information

17   about you, to choose which ads to display to you."

18           In sum, Walmart's Privacy Policy, Terms of Use, and Notices never informed Plaintiffs

19   that Walmart discloses personally identifiable Video Media (or any other) purchase information

20   to Facebook for advertising purposes. Thus, Walmart never obtained Plaintiffs' consent to

21   disclose their Video Media purchases to Facebook for advertising purposes. Accordingly,

22   Plaintiffs state claims under the VPPA and Section 1799.3.

23

24
_____
25   [3] Walmart could not even establish Plaintiffs had constructive notice of the content of the Notices
     given the inconspicuous placement of the hyperlink to the Notices within the Privacy Policy and
26   the lack of notice that the Notices were applicable or binding. *See Nguyen v. Barnes & Noble Inc.*,
     763 F.3d 1171, 1179 (9th Cir. 2014) (holding no constructive notice where "a website makes its
27   terms of use available via a conspicuous hyperlink on every page of the website but otherwise
     provides no notice to users nor prompts them to take any affirmative action to demonstrate
28   assent").

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

**B.      Walmart failed to obtain Plaintiffs' informed written consent in the manner the VPPA requires**

**(1)      *Walmart failed to obtain Plaintiffs' consent "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer"***

Even if Walmart had obtained consent, it did not do so in the form and manner required by the VPPA. Subsection (b)(2)(B)(i) of the VPPA requires that the consumer's "informed written consent" be "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710 (b)(2)(B)(i).

Walmart claims to have obtained Plaintiffs' written consent when Plaintiffs clicked a "Place Order" button on walmart.com's purchase confirmation page that appeared next to the text: "By clicking Place Order, you agree to Walmart's Updated Privacy Policy and Terms of Use." Santhikumar Decl. Ex. A at 2. The words "Privacy Policy" and "Terms of Use" appear there as hyperlinks to Walmart's then-applicable Privacy Policy and Terms of Use. Clicking the "Place Order" button thus manifests agreement: (1) to place a walmart.com order for the specified item and pay the specified price for it, (2) to Walmart's Privacy Policy, and (3) to Walmart's Terms of Use. The "form" by which Walmart purportedly obtains consent therefore consists of the purchase confirmation page, the Privacy Policy, and the Terms of Use.

Taken together the three documents span 35 pages and set forth numerous "legal and financial obligations of the consumer" beyond purported consent to Walmart's disclosure of personally identifiable Video Media purchase information to Walmart. Those provisions include, among others: (1) the financial obligation to pay for the purchased item (as set forth on the purchase confirmation page), (2) the legal obligation to agree to Walmart's 15 page Privacy Policy, (3) the legal and financial obligation to agree to Walmart's 19 page Terms of Use, and (4) numerous separate legal and financial obligations enumerated in Walmart's Terms of Use.[4] Because Plaintiffs' single act of consent for each purchase manifested agreement to numerous

---

[4] These include, among others, the customer: certifying that the information he or she provides is accurate and complete; granting Walmart perpetual and irrevocable rights to use any submission the customer makes to a Walmart website; representing and warranting he or she will not submit 12 categories of prohibited content; agreeing to accept and pay for the items; and agreeing to defend, indemnify, and hold harmless Walmart from all claims arising from use of a Walmart website. *See* Cole Decl. Ex. E pp 3, 4, 5, 6, 19.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

legal and financial obligations, Walmart failed to obtain Plaintiffs' consent "in a form distinct and separate from any form setting forth other legal or financial obligations."

Walmart's contention that the Privacy Policy satisfies Subsection (b)(2)(B)(i) (Motion at 11:11-15) misses the mark because Plaintiffs' purported consent was not given in or on the Privacy Policy. It was given on the order acceptance page by clicking the "Place Order" button, which placed an order and purportedly also accepted Walmart's Privacy Policy and Terms of Use. Even if the Privacy Policy could be considered a standalone consent form (it cannot), the relevant consent terms are not "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer" because the Privacy Policy authorizes numerous uses of customers' personal information besides any purported authorization to disclose consumers' Video Media purchases to Facebook.[5]

That Walmart required a "distinct and separate" act of consent for each separate purchase (Motion at 11 fn. 5) does not satisfy the requirement for a distinct and separate form either. That act of consent—clicking the Place Order button—each time committed Plaintiffs to three documents totaling 35 pages, each "setting forth legal or financial obligations" other than those purportedly authorizing the at-issue disclosures.

Because Walmart failed to obtain Plaintiffs' consent "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer," Walmart cannot establish consent under the VPPA.

**(2)    *Walmart failed to provide an opportunity for Plaintiffs to: (a) withdraw their purported consent on a case-by-case basis, or (b) withdraw from ongoing disclosures***

Subsection (b)(2)(B)(iii) of the VPPA requires that "the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw [his or her consent] on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election…." 18 U.S.C. § 2710 (b)(2)(B)(i).

---

[5] Walmart contends the Privacy Policy "does not impose obligations on the consumer at all and simply explains how Walmart uses consumer data," (Motion at 11:14-15) but to the extent the Privacy Policy operates as a standalone consent form, it obligates the customer to authorize each of the practices set forth therein as a condition of purchase.

Walmart did not provide an opportunity, in a clear and conspicuous manner, for Plaintiffs to: (a) withdraw their purported consent on a case-by-case basis, or (b) withdraw from ongoing disclosures. Walmart's Terms of Use and Privacy Policy say nothing on point about customers having the opportunity to withdraw consent to Walmart's disclosure of personal information to third parties and Walmart does not contend otherwise. *See* Motion at 12:27-13:6; Brown Decl. Exs. B-C; Cole Decl. Ex. E.

Walmart's "Notices" discuss several mechanisms for opting out of interest-based advertising from Walmart. *See* Brown Decl. Ex. D at 18-20. But these provisions are insufficient to satisfy Subsection (b)(2)(B)(iii) because, among other things: (1) they purport to provide an opportunity to opt out of interest-based advertising from Walmart, not to withdraw consent to Walmart's disclosure of information to third parties, much less Walmart's disclosure of personally identifiable Video Media purchase information to Facebook for advertising purposes; and (2) they do not satisfy the clear and conspicuous requirement because, besides being off-point, they appear outside the Privacy Policy under two layers of hyperlinks, rendering them, at best, *in*conspicuous.

Walmart contends this requirement is inapplicable because Walmart does not seek to obtain consent "in advance" to make ongoing disclosures in the future (as provided for in Subsection (b)(2)(B)(ii)(II)), and instead obtains disclosure at the time of each discrete purchase (and the concurrent disclosure to Facebook). Motion at 12:27-13:6. But the VPPA does not condition the applicability of Subsection (b)(2)(B)(iii) on the video tape service provider seeking consent "in advance for a set period of time" under Subsection (b)(2)(B)(ii)(II). Rather Subsection (b)(2)(B)(iii) is an independent requirement for every valid consent under the VPPA, regardless of whether Subsection (b)(2)(B)(ii)(II) applies. Even if subsection (b)(2)(B)(iii) only applies where a video tape service provider seeks consent "in advance" to make ongoing disclosures in the future, as Walmart contends, it would still apply here because the terms Walmart claims establish consent are not limited in temporal scope and (to the extent they authorize disclosures at all) would authorize future disclosures.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

1    Because Walmart failed to give Plaintiffs an opportunity, in a clear and conspicuous

2    manner, to withdraw their consent on a case-by-case or ongoing basis, Walmart cannot establish

3    consent under the VPPA.

4    **C.    Plaintiffs' allegations establish standing under the UCL**

5    To establish standing for a UCL claim, Plaintiffs must allege facts showing they suffered

6    "a loss or deprivation of money or property sufficient to qualify as injury in fact, *i.e.*, *economic*

7    *injury*" as a result of the unfair competition. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310,

8    322 (2011). "There are innumerable ways in which economic injury from unfair competition may

9    be shown," including the plaintiff "surrender[ing] in a transaction more, or acquir[ing] in a

10   transaction less, than he or she otherwise would have." *Id.* at 323.

11   **(1)    *Plaintiffs lost money or property by paying more, or getting less, than they would have***
12   ***but for Walmart's failure to comply with its statutory obligations***

13   Plaintiffs allege that Walmart violated the "unlawful" prong of the UCL by disclosing

14   their personal information to Facebook without the requisite consent in violation of Section

15   1799.3 and VPPA. Plaintiffs allege that they "would not have paid Walmart as much—or would

16   not have paid Walmart at all—for the Video Media had Walmart required [Plaintiffs] consent to

17   the disclosure of their purchasing data (as required by [Section 1799.3 and the VPPA]) as a

18   condition of the sale." Compl. ¶ 53. Plaintiffs further allege that "Walmart's systematic and

19   unlawful disclosure of Plaintiffs' video purchasing data to Facebook diminished the value of the

20   Video Media that Plaintiffs purchased to a level below the prices Plaintiffs paid for it." *Id.*

21   The economic injury Plaintiffs allege is not Walmart's disclosure of their personal

22   information to Facebook (as Walmart argues), but the difference between: (a) what Plaintiffs paid

23   Walmart for the Video Media they purchased; and (b) what they would have been willing to pay

24   Walmart for the Video Media had Walmart sought consent to disclose Plaintiffs' personal

25   information to Facebook as Civil Code Section 1799.3 and the VPPA require. Walmart's

26   authorities holding that improper disclosure of personal information is not an economic injury for

27   purposes of UCL standing are thus inapposite. Unlike Plaintiffs here, the plaintiffs in the cases

28

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

1   Walmart cites did not allege that the defendant's unfair, unlawful, or fraudulent conduct caused

2   them to pay the defendant more money than they otherwise would have.[6]

3        Allegations that the defendant's unlawful, unfair, or fraudulent conduct caused the

4   plaintiff to pay the defendant more for a product than he or she otherwise would have (the

5   "benefit-of-the-bargain" or "price premium" theory) are sufficient to allege "lost money or

6   property" under the UCL. *See In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204,

7   1213 (C.D. Cal. 2017) (plaintiffs' allegation "that they would not have purchased or would have

8   paid less for their Vizio Smart TVs had Vizio properly disclosed its consumer data collection and

9   disclosure practices" adequately alleged UCL standing under the price premium theory); *In re*

10  *Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1130-31 (N.D. Cal. 2018)

11  (while data breach victims with free Yahoo email accounts lacked UCL standing, plaintiff

12  Mortensen's allegations that he would not have signed up for Yahoo's premium email service

13  costing $19.95 a year had defendants disclosed their inadequate data security practices adequately

14  alleged benefit-of-the-bargain losses sufficient for UCL standing); *In re Anthem, Inc. Data*

15  *Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *32-33 (N.D. Cal. May 27, 2016)

16  (data breach plaintiffs who alleged they paid for insurance services that were not provided in

17  compliance with applicable privacy laws adequately alleged economic injury because they

18  allegedly "surrender[ed] in a transaction more, or acquire[d] in a transaction less, than he or she

19  otherwise would have"); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1224 (N.D.

20  Cal. 2014) (plaintiffs' allegations that "they personally spent more on Adobe products than they

21

22

---

23  [6] *See Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008) (alleged theft of personal
    information plaintiff provided to Gap as part of job application does not constitute a "loss of

24  property" under the UCL); *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL
    4403963, at *14 (N.D. Cal. Sept. 20, 2011) (defendants' alleged unlawful disclosure of plaintiffs'

25  personal information insufficient for UCL standing where plaintiffs did not pay fees for
    defendants' services); *In re Google Inc. Street View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067,

26  1086 (N.D. Cal. 2011) (Google Street View vehicles' alleged interception of plaintiffs' data over
    Wi-Fi networks was not lost property under the UCL); *Svenson v. Google Inc.*, 65 F. Supp. 3d

27  717, 730 (N.D. Cal. 2014) (Google's alleged disclosure of plaintiff's personal information to
    third-party app developers did not support UCL standing where plaintiff failed to allege that she

28  changed her economic position based on Google's unlawful conduct).

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

would had they known Adobe was not providing the reasonable security Adobe represented it

was providing" adequately alleged standing under the UCL).

**(2)    *These allegations further establish injury in fact***

Plaintiffs' also satisfy the UCL's injury in fact requirement. Injury in fact includes "an

invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or

imminent, not conjectural or hypothetical." *Kwikset Corp.*, 51 Cal. 4th at 322 (internal quotations

omitted). "Notably, lost money or property—economic injury—is itself a classic form of injury in

fact." *Id* at 323. "If a party has alleged or proven a personal, individualized loss of money or

property in any nontrivial amount, he or she has also alleged or proven injury in fact." *Id*. at 325.

Thus, "the same allegations or proof that suffice to establish economic injury will

generally show injury in fact as well." *Id.* at 325. Allegations that the defendant's unfair,

unlawful, or fraudulent conduct caused a plaintiff to: (a) pay more than he or she otherwise would

have; or (b) buy a product he or she otherwise would not have purchased, satisfy this standard.

*See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) (finding injury in fact

where the plaintiffs asserted that "class members paid more . . . than they otherwise would have

paid, or bought [a product] when they otherwise would not have done so," because of the

defendant's deceptive claims); *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 802-03 (2006)

(finding standing where the plaintiff alleged that he was required to buy more fuel than he

otherwise would have because of the defendant's business practices); *In re Vizio, Inc., Consumer

Privacy Litig.*, 238 F. Supp. 3d at 1213; *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d at

1224.

The cases Walmart cites where plaintiffs' injury was deemed too conjectural or

hypothetical to satisfy the injury in fact requirement involved substantially more attenuated

harms. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048-49 (9th Cir. 2017)

(recipient of text messages from gym did not cause any economic harm, and plaintiff lacked UCL

standing, where he paid for an unlimited text messaging plan and therefore was not charged extra

for the text messages at issue and could not show that any price increase for his plan resulted);

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

*Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1554-55 (2011) (allegation that defendant's misrepresentation that fee was mandatory denied plaintiff the "opportunity [to] shop around for retailers that do not charge consumers this discretionary fee" alleged only a conjectural or hypothetical injury because plaintiff failed to allege that she could have obtained the same product at a lower price from another source). In contrast, here, Plaintiffs allege that Defendants' unlawful practices caused them to suffer the concrete and particular injury of paying money to Walmart that they otherwise would not have paid.

Walmart's contention that Plaintiffs cannot show injury in fact because they consented to Walmart's terms is also unfounded. As discussed above, (1) Walmart's terms did not authorize the challenged disclosures, and (2), even if Walmart's terms established consent, Plaintiffs would still state a UCL claim because Walmart did not obtain informed written consent in the manner required by the VPPA.

Walmart's citation to *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d at 1048 is inapposite. The UCL claims that court rejected in the cited pages of that opinion were all "based on alleged misrepresentations, omissions, and fraudulent conduct by Apple." *Id.* Where a UCL claim is premised on misrepresentations, courts require allegations of actual reliance and injury at the pleading stage, regardless of which UCL prong the claim is asserted under. *Id.* at 1047-48. The *Backhaut* plaintiffs were therefore required, but failed, to allege actual reliance on an affirmative misrepresentation or a misleading omission. *Id.* at 1048-49. Unlike the claims dismissed in *Backhaut*, Plaintiffs' UCL claims here are not based on misrepresentations, but on, *inter alia*, Walmart's failure to obtain the consent required by Civil Code Section 1799.3 and the VPPA. But for Walmart's failure to comply with these statutory consent requirements, Plaintiffs would not have paid Walmart as much—or would not have paid Walmart at all—for the Video Media they purchased. Accordingly, Plaintiffs adequately allege economic harm flowing from Walmart's unlawful conduct without alleging reliance on a misrepresentation or deceptive omission.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS

1

## 5.     Conclusion

2      For the foregoing reasons, Walmart's Motion to Dismiss should be denied. Should the

3  Court grant any part of Walmart's Motion to Dismiss, Plaintiffs request leave to amend their

4  Complaint.

5

6   DATED:  January 17, 2019                    **RESPECTFULLY SUBMITTED,**

7                                              **GALLO LLP**

8

9                                    By:  */s/ Ray E. Gallo*

10                                        Ray E. Gallo
                                          Attorneys for Plaintiffs
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**
CASE NO. 18-CV-06678-RS