COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
WHITTY SOMVICHIAN (194463) (wsomvichian@cooley.com)
KYLE C. WONG (224021) (kwong@cooley.com)
MAXWELL E. ALDERMAN (318548) (malderman@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:   (415) 693-2000
Facsimile:    (415) 693-2222

Attorneys for Defendant
WALMART INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALICIA CAPPELLO and CATHERINE MOSQUEDA, for themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART, INC., a Delaware corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.  3:18-cv-06678-RS<br><br>**WALMART INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**<br><br>Date:     February 21, 2019<br>Time:    1:30 p.m.<br>Judge:   Hon. Richard Seeborg |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF. WALMART INC.'S REPLY
ISO MTD COMPLAINT
Case No. 3:18-cv-06678-RS

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT .................................................................................................................... 2

    A.   Plaintiffs Consented to the Alleged Practices by Agreeing to Walmart's Privacy Policy. ............................................................................................. 2

        1.   Plaintiffs Cannot Avoid Their Consent to the Privacy Policy by Attacking Individual Statements Taken out of Context ................... 3

        2.   The "Opt-In" Provision Plaintiffs Cite Applies Only to Third-Parties' Own Direct Marketing to Users, Not Walmart's. ............................. 5

        3.   The Notices Are Part of the Terms to Which Plaintiffs Agreed. ..................... 6

    B.   Walmart's Consent Process Satisfies the Requirements of VPPA. ............................. 6

    C.   Plaintiffs' UCL Claims Fail as a Matter of Law Because Plaintiffs Have Suffered No Economic Injury. ............................................................. 8

III. CONCLUSION ................................................................................................................. 11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i.

DEF. WALMART INC.'S REPLY
ISO MTD COMPLAINT
Case No. 3:18-cv-06678-RS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aderhold v. Car2go N.A., LLC*,
   No. 13-cv-0489, 2014 WL 794802 (W.D. Wash. Feb. 27, 2014) ................................................. 3, 4

*In re Adobe Sys., Inc. Privacy Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) ................................................................................................ 10

*Amtower v. Photon Dynamics, Inc.*,
   158 Cal. App. 4th 1582 (2008) ................................................................................................................ 6

*In re Anthem, Inc. Data Breach Litig.*,
   No. 15-md-2617, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ................................................. 10

*Aron v. U-Haul Co. of Cal.*,
   143 Cal. App. 4th 796 (2006) ................................................................................................................ 10

*Backhaut v. Apple, Inc.*,
   74 F. Supp. 3d 1033 (N.D. Cal. 2014) ............................................................................................ 10, 11

*Birdsong v. Apple Inc.*,
   No. 06-cv-2280, 2008 WL 7359917 (N.D. Cal. Jun. 13, 2008) ................................................... 9

*Hansen v. Newegg.com Ams., Inc.*,
   25 Cal. App. 5th 714 (2018) .................................................................................................................... 9

*Hawkins v. Kellogg Co.*,
   224 F. Supp. 3d 1002 (S.D. Cal. 2016) ................................................................................................ 9

*Ingels v. Westwood One Broad. Servs., Inc.*,
   129 Cal. App. 4th 1050 (2005) ................................................................................................................ 8

*Maples v. SolarWinds, Inc.*,
   50 F. Supp. 3d 1221 (N.D. Cal. 2014) ................................................................................................ 5

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) ............................................................................................................ 9, 10

*McGee v. Diamond Foods, Inc.*,
   No. 14-cv-2446, 2016 WL 816003 (S.D. Cal. Mar. 1, 2016) ........................................................ 9

*Phan v. Agoda Co. Pte. Ltd.*,
   --- F. Supp. 3d ---, No. 16-cv-7243, 2018 WL 6591800 (N.D. Cal. Dec. 13, 2018) ............... 3

*Simpson v. Cal. Pizza Kitchen, Inc.*,
   989 F. Supp. 2d 1015 (S.D. Cal. 2013) ................................................................................................ 9

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

DEF. WALMART INC.'S REPLY
ISO MTD COMPLAINT
Case No. 3:18-cv-06678-RS

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........ 3, 4

*Svenson v. Google Inc.*,
65 F. Supp. 3d 717 (N.D. Cal. 2014) ........ 10

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017) ........ 11

*In re Vizio, Inc., Consumer Privacy Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 9

*Wolschlager v. Fidelity Nat'l Title Ins. Co.*,
111 Cal. App. 4th 784 (2003) ........ 6

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
313 F. Supp. 3d 1113 (N.D. Cal. 2018) ........ 9

*Zalkind v. Ceradyne, Inc.*,
194 Cal. App. 4th 1010 (2011) ........ 5

**Statutes**

18 U.S.C. 2710(b)(2)(B) ........ 6, 7, 8

California Civil Code § 1799.3 ........ *passim*

**Other Authorities**

H.R. REP. No.112-312 (Dec. 2, 2011) ........ 8

S. REP. No. 112-258 (Dec. 20, 2012) ........ 8

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

DEF. WALMART, INC.'S REPLY
ISO MTD COMPLAINT
Case No. 3:18-cv-06678-RS

## I.   INTRODUCTION

Plaintiffs' Opposition (ECF No. 25) fails to justify the many pleading defects that mandate dismissal of their complaint ("Complaint") in its entirety. Indeed, Plaintiffs now concede that when they made the video purchases at issue, they expressly agreed to be bound by Walmart's Privacy Policy ("Privacy Policy") (Opp'n at 7.), which specifically advised Plaintiffs that information about their online purchases could be disclosed in order to provide personalized ads. Plaintiffs' admitted agreement to the Privacy Policy constitutes consent that bars their claims under the Video Privacy Protection Act ("VPPA") and California Civil Code Section 1799.3 ("Section 1799.3") as a matter of law.

Because Plaintiffs cannot dispute their agreement to the Privacy Policy, they try to distort its meaning by asking the Court to look at isolated statements taken out of context. But established law precludes this sort of piecemeal analysis and requires that Walmart's disclosures be evaluated in their entirety. When the Privacy Policy is read as a whole, as it must be, Plaintiffs' mischaracterizations of Walmart's disclosures become plainly evident.

Plaintiffs next try to invalidate their consent to the Privacy Policy by claiming that Walmart's consent process—in which consumers are presented separately with the Terms of Use ("TOU") and Privacy Policy through individual links and are required to click to agree *to both*—does not comply with specific requirements of VPPA. But the hyper-technical requirements that Plaintiffs seek to impose are not supported by either the plain text or legislative history of the statute. Indeed, when Congress amended VPPA in 2012, it was well aware of, and specifically approved, the type of online consent process that Walmart uses, in which users are asked to agree to a distinct privacy policy that explains how consumer information will be used. This Court should reject Plaintiffs' misreading of Walmart's disclosures and the VPPA statute, and dismiss their VPPA and Section 1799.3 claims as a matter of law.

With respect to Plaintiffs' claim under the Unfair Competition Law ("UCL"), Plaintiffs concede that the alleged disclosure of their purchase information does not constitute the type of economic injury needed to support standing under the UCL. (Opp'n at 18.) Instead, Plaintiffs claim

Cooley LLP
Attorneys At Law
San Francisco

1.

Def. Walmart, Inc.'s Reply
ISO MTD Complaint
Case No. 3:18-cv-06678-RS

they did not get the "benefit of the bargain" when they made their purchases from Walmart. Under established law, however, a plaintiff relying on this type of alleged injury must show that she was deprived of the "benefit of the bargain" because she relied on some alleged misrepresentation of the defendant. Here, Plaintiffs can point to no such misrepresentation that allegedly induced them to make the purchases at issue. In fact, Plaintiffs clearly state that their claims are "not based on misrepresentations" and effectively concede that their claims cannot support a "benefit of the bargain" theory. (Opp'n at 21.) Consequently, just as with their other defective claims, their UCL claim fails as a matter of law and should be dismissed.

## II.   ARGUMENT

### A.   Plaintiffs Consented to the Alleged Practices by Agreeing to Walmart's Privacy Policy.

Plaintiffs do not dispute that they agreed to both Walmart's TOU and the separate Privacy Policy when they made their purchases on walmart.com. (Mot. at 3-4; Santhikumar Decl. (ECF No. 16-1), ¶ 3; Cole Decl. (ECF No. 16-7), ¶ 3.) And, as Walmart's Motion demonstrates, the disclosures in the Privacy Policy, taken together, clearly disclosed the alleged practices that Plaintiffs now seek to challenge. (Mot. at 5-7.) By agreeing to the Privacy Policy and the linked Notices at the time of their purchases, Plaintiffs acknowledged that, among other things, Walmart could "use your personal information to provide you products and services," which include "personaliz[ing]" Walmart's "service offerings, websites, mobile services, *and advertising*" (Brown Decl. (ECF No. 16-3), ¶ 4; Ex. B (ECF No. 16-4) at 5-6; Ex. C (ECF No. 16-5) at 5-6 (emphasis added)), and that Walmart may "share personal information about you with service providers" to help provide those very services. (Brown Decl., ¶ 4; Ex. B at 7; Ex. C at 6.) Further, Plaintiffs were advised that "personal information" about "how you browse and shop [can be used] to show you ads that are more relevant to you" and that these personalized advertisements from Walmart can appear on Facebook. (Brown Decl., ¶ 6; Ex D (ECF No. 16-6) at 18.) Plaintiffs' express consent to these terms precludes their VPPA and Section 1799.3 claims as a matter of law.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

DEF. WALMART, INC.'S REPLY
ISO MTD COMPLAINT
Case No. 3:18-cv-06678-RS

1. **Plaintiffs Cannot Avoid Their Consent to the Privacy Policy by Attacking Individual Statements Taken out of Context.**

In an effort to avoid their consent to the practices disclosed in the Privacy Policy, Plaintiffs point to individual statements in isolation and then complain that these individual statements do not provide a complete picture of the practices at issue. This piecemeal analysis of Walmart's disclosures is contrary to both logic and established law. As their own Opposition make clear, "[i]n determining consent, courts consider whether the circumstances, *considered as a whole*, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization." (Opp'n at 8 (quoting *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018) (emphasis added).) In *Smith*, the Ninth Circuit affirmed dismissal because the plaintiffs there had consented to the alleged conduct by agreeing to Facebook's terms and various policies, which—when considered together—reasonably notified plaintiffs of the conduct at issue. *Id.* at 8-9. Numerous courts have similarly analyzed the issue of consent by examining the totality of disclosures contained in multiple sources. *See*, *e.g.*, *Aderhold v. Car2go N.A., LLC*, No. 13-cv-0489, 2014 WL 794802, at *7 (W.D. Wash. Feb. 27, 2014) (examining Privacy Policy as well as Trip Process document and Terms of Service to find consent on a motion to dismiss); *Phan v. Agoda Co. Pte. Ltd.*, --- F. Supp. 3d ---, No. 16-cv-7243, 2018 WL 6591800, at *1 (N.D. Cal. Dec. 13, 2018) (finding consent to challenged conduct in multiple documents, including the site's terms and its separate privacy policy). Similarly here, Plaintiffs cannot avoid their agreement to the Privacy Policy by asking the Court to focus on individual statements in isolation.

Indeed, Plaintiffs' criticism of Walmart's supposedly incomplete disclosures is highly misleading because it ignores the totality of the terms. For example, Plaintiffs point to a single sentence in the Privacy Policy that states: "We also . . . share your personal information within our corporate family of companies." (Brown Decl., Ex. B at 6; Ex. C at 6.) From this statement, Plaintiffs claim that Walmart fails to "inform customers that Walmart discloses customers' personal information to third parties outside its corporate family of companies . . . ." (Opp'n at 10.) But the quoted statement does not say that Walmart *only* shares information within its corporate family and *never* to third-parties. To the contrary, the following section of the Privacy Policy—conspicuously titled "How . . .

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

DEF. WALMART, INC.'S REPLY
ISO MTD COMPLAINT
Case No. 3:18-cv-06678-RS

We Share Your Personal Information **Outside of** Walmart" (emphasis added)—clarifies that Walmart "will not share your personal information outside of our corporate family of companies, *except* in [certain] circumstances," and goes on to specify those circumstances, which include disclosure of information to "companies that help us improve our products and services." (Brown Decl., Ex. B at 6-7; Ex. C at 6 (emphasis added).)

Plaintiffs then claim that this provision fails to adequately explain that personal information could be disclosed "for advertising purposes" because "advertising" is not a "product or service of Walmart." (Opp'n at 11.) But the previous section in the Privacy Policy (from which Plaintiffs themselves quote) states that Walmart uses "personal information to provide you ***products and services***," including "[t]o help us ***personalize our*** . . . ***advertising***." (Brown Decl., Ex. B at 5-6; Ex. C at 5-6 (emphasis added).) A "reasonable" consumer (to quote *Smith*) would therefore understand that Walmart's "products and services" include personalized advertising, and that personal information can be shared with service providers, like Facebook, who help to improve those advertising services.[1]

Plaintiffs next argue that this disclosure is not "specific enough to establish consent because it fails to notify customers of the content (personally identifiable Video Media purchase information), recipient (Facebook), or purpose (advertising) of the at-issue disclosures." (Opp'n at 11.) But Plaintiffs again erroneously read the statement in isolation. When read as a whole, the Privacy Policy and linked Notices clearly notify customers (1) that the personal information subject to disclosure includes "how [they] browse and shop" (Brown Decl., Ex. D at 18) and any "online purchase . . . with us" (Ex. C at 3), (2) that such information can be disclosed to Facebook (Ex. D at 18), and (3) the purposes of disclosure can include serving personalized ads (Ex. D at 18; Ex. B at 5-6; Ex. C at 5-6).

---

[1] Plaintiffs also argue that "personalized advertising does not require disclosing customers' personal information" to any third parties because "Walmart would not need to disclose purchase information to third parties to run targeted ads on Walmart.com or its other sites." (Opp'n at 10.) But their own allegations focus ***not*** on personalized ads on walmart.com or Walmart's other websites, but on ***Facebook's*** platform. (Compl. ¶ 20b. (noting that the Facebook pixel allegedly allowed Walmart to know "when a customer took an action after seeing [its] Facebook ad.").) Plaintiffs do not explain how Walmart could serve a personalized ad on Facebook without informing Facebook of personal information about that user. Indeed, as the Notice to the Privacy Policy clearly states, information about "how you browse and shop" can be shared with Facebook. (Brown Decl., ¶ 6; Ex. D at 18.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.

DEF. WALMART, INC.'S REPLY
ISO MTD COMPLAINT
Case No. 3:18-cv-06678-RS

Plaintiffs expressly agreed to these terms when making their purchases and their consent to Walmart's disclosed practices precludes their VPPA and Section 1799.3 claims as a matter of law. *See Aderhold*, 2014 WL 794802, at *7 (finding that plaintiffs had consented to receive text messages using the plaintiffs' personal information where the Privacy Policy disclosed "generically" that the defendant would use personal information "in any car2go 'business process'").

### 2. The "Opt-In" Provision Plaintiffs Cite Applies Only to Third-Parties' Own Direct Marketing to Users, Not Walmart's.

Plaintiffs further argue that Walmart's Privacy Policy requires specialized "opt-in" consent anytime Walmart seeks to share a user's personal information with third parties. But the Privacy Policy makes clear that the opt-in requirement applies only where Walmart shares a user's personal information with "companies outside our corporate family of companies *for **their** use in direct marketing, such as sending you promotions*." (Brown Decl., Ex. B at 9-10; Ex. C at 8-9 (emphasis added).) That is, the opt-in requirement applies where consumers' information is given to third parties for use in ***their own*** direct marketing efforts. This has nothing to do with the circumstances alleged in the Complaint, which relate to Walmart's use of consumer information to personalize ***Walmart's*** advertising.

Plaintiffs' interpretation not only ignores the actual language of the provision, but also conflicts with other provisions in the terms. *Maples v. SolarWinds, Inc.*, 50 F. Supp. 3d 1221, 1228 (N.D. Cal. 2014) ("[T]he meaning of a contract must be derived from reading the whole of the contract, with individual provisions interpreted together, in order to give effect to all provisions and to avoid rendering some meaningless.") (quoting *Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1027 (2011)). For instance, Plaintiffs' interpretation of the "opt-in" provision—that disclosure of personal information to outside companies for any purpose requires an affirmative opt-in from the user—cannot be squared with other provisions that Plaintiffs cite, which explicitly allow for disclosure to third parties to facilitate Walmart's products and services without any affirmative opt-out. (*See supra* Section A.1.) As such, Plaintiffs' interpretation fails to give effect to every provision in the contract

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

DEF. WALMART, INC.'S REPLY
ISO MTD COMPLAINT
Case No. 3:18-cv-06678-RS

and should be rejected.[2]

### 3. The Notices Are Part of the Terms to Which Plaintiffs Agreed.

Plaintiffs' argument that the Notices are not incorporated in the Privacy Policy is equally unavailing.[3] Under California law, a contract may incorporate other documents by reference so long as the reference to such documents is "clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1607 (2008) (internal quotations and citation omitted). Here, Walmart's Privacy Policy (which Plaintiffs concede *is* part of their agreement with Walmart) specifically references and provides a hyperlink to the Notices. In the "What are Your Choices?" section of the Privacy Policy, Walmart invites the reader to "Learn more about interest-based advertising, including how to opt out." This statement contains a direct hyperlink to the "About Our Ads" page within the Notices that contains the relevant disclosures. (Ex. B at 8; Ex. C at 8; Ex. D at 17-19; Wong Decl. ¶¶ 3, 5.) The Notice is therefore incorporated into the Privacy Policy because it is clearly referenced, called to the Plaintiffs' attention, and readily available. *Amtower*, 158 Cal. App. 4th at 1607-08; *Wolschlager v. Fidelity Nat'l Title Ins. Co.*, 111 Cal. App. 4th 784, 787 (2003).

### B. Walmart's Consent Process Satisfies the Requirements of VPPA.

Plaintiffs next argue that their express agreement to Walmart's Privacy Policy does not satisfy VPPA because consumers who buy video media on walmart.com also agree to Walmart's TOU and other terms (price, shipping, etc.) when completing a purchase. But the fact that purchases on walmart.com are subject to these separate and additional terms does not undermine Walmart's compliance with VPPA. It is undisputed that each time Plaintiffs purchased Video Media from Walmart, they clicked to agree to Walmart's Privacy Policy, which explains how Walmart uses their

---

[2] Moreover, even were the "opt-in" provision to apply here, Walmart complies with this directive because every purchase on the walmart.com website requires the user to affirmatively accept the terms. (Santhikumar Decl., ¶¶ 2, 3.)

[3] Even without the Notices, however, consent would still exist given the statements in the Privacy Policy as described in the previous sections. Indeed, the Privacy Policy discloses that Walmart can use a consumer's "personal information" to provide its "products and services," which include "personalize[d] advertising" and that in furtherance of such advertising, Walmart can share "personal information" with third party service providers. (*See, supra* Section A.1.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

DEF. WALMART, INC.'S REPLY
ISO MTD COMPLAINT
Case No. 3:18-cv-06678-RS

video purchase information and does so "in a form distinct and separate from" the TOU and other terms. 18 U.S.C. § 2710(b)(2)(B)(i). This process fully complies with VPPA.

Plaintiffs' interpretation of VPPA distorts the statute to impose obligations that Congress could not have intended. In Plaintiffs' view, retail websites that sell video media cannot obtain consent by asking consumers to agree to a Privacy Policy that specifically informs users that their video purchase information can be disclosed if the Policy includes any *other* privacy-related disclosure, because such consent would not be "distinct and separate" in Plaintiffs' view. (Opp'n at 16). And even if a website added an entirely separate Privacy Policy that *only* addresses video purchase information, it could not ask consumers to agree to such a Privacy Policy at the time they complete a purchase, because such consent still would not be "distinct and separate" from the commercial terms of the purchase in Plaintiffs' view. (*See id.* at 16.) Online retailers would therefore be forced to implement a specialized process for video media purchases in which consumers (1) are asked to consent to a privacy disclosure that addresses *only* the use of video information and no other privacy topic, *and* (2) where the act of consent occurs separately from the consumer's agreement to the retailer's terms of use, general privacy policy, and the commercial terms of the purchase.

Nothing in the text or legislative history of VPPA suggests that Congress intended to impose this awkward process for obtaining consent in online transactions. Notably, when Congress added the "distinct and separate" language on which Plaintiffs rely, it also added language to clarify that consent can be obtained "through an electronic means using the Internet," in order to ensure that websites could continue obtaining consent through prevailing means. 18 U.S.C. § 2710(b)(2)(B). The "distinct and separate" provision is therefore best understood as authorizing the common practice of obtaining consent via an online Privacy Policy, so long as the Policy is "separate" from other terms (*e.g.*, here, the TOU) and addresses the "distinct" subject of how consumer data will be used. Walmart's online process fully complies with these requirements.

Plaintiffs further argue that Walmart's consent process does not satisfy VPPA because consumers are not allowed to opt-out of consent under Subsection (b)(2)(B)(iii). This opt-out provision, however, applies only to instances where an entity obtains consent "in advance" to disclose video purchases that occur in the future, under Subsection (b)(2)(B)(ii)(II). Walmart does not purport

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

DEF. WALMART, INC.'S REPLY
ISO MTD COMPLAINT
Case No. 3:18-cv-06678-RS

to obtain consent "in advance" to disclose future purchases; it obtains consent at the time of ***each*** individual purchase, as explained in Walmart's Motion. The opt-out provision of Subsection (b)(2)(B)(iii) therefore does not apply.

Plaintiffs claim that the opt-out provision of VPPA is a standalone requirement that applies in all cases, but the text of the statute demonstrates otherwise. *See* 18 U.S.C. 2710(b)(2)(B). On its face, Subsection (b)(2)(B)(iii) contemplates a right to opt-out from "ongoing disclosures" (meaning prospective or recurring). *Id.* Plaintiffs have not alleged such ongoing disclosures. Moreover, the applicable House and Senate Reports confirm that the opt-out provision (Subsection (b)(2)(B)(iii)) is tied directly to the preceding provision that allows for obtaining consent in advance for ongoing disclosures of future transactions (Subsection (b)(2)(B)(ii)(II)). *See* S. REP. No. 112-258, at 3 (Dec. 20, 2012) ("[T]he bill provides that consumers may 'opt-in' to the information sharing on an ongoing basis for a period of up to two years at a time, and they may 'opt-out' of the information sharing at any time."); H.R. REP. No.112-312, at 3 (Dec. 2, 2011) (explaining that VPPA was amended "to allow consumers to provide their informed, written consent once so they can—if they so choose—[] continuously share their movie or TV show preferences through their social media sites" but pairs the option to grant "with the option for the consumer to 'opt-out' of this sharing agreement at any time"). Because Walmart does not seek advance consent for ongoing disclosures under Subsection (b)(2)(B)(ii)(II), it need not provide the corresponding opt-out rights under Subsection (b)(2)(B)(iii).

### C. Plaintiffs' UCL Claims Fail as a Matter of Law Because Plaintiffs Have Suffered No Economic Injury.

As Walmart explained in its Motion, Plaintiffs do not have standing under the UCL because they fail to allege economic injury.[4] In their Opposition, Plaintiffs concede they suffered no economic harm from Walmart's alleged disclosure of their purchasing history. (Opp'n at 18 (explaining that the alleged "economic injury" at issue "is not Walmart's disclosure of their personal information").) Instead, Plaintiffs latch onto a "benefit of the bargain" theory of economic injury, and argue (based on

---

[4] Plaintiffs also do not contest that their claims must be dismissed under the UCL should their predicate "unlawful" conduct claim—alleged violations of the VPPA and Section 1799.3—fail as a matter of law. *See Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005). (Mot. at 9 n.6.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.

DEF. WALMART, INC.'S REPLY
ISO MTD COMPLAINT
Case No. 3:18-cv-06678-RS

a single conclusory allegation in the Complaint) that they would not have paid as much for their video media had Walmart sought consent before allegedly disclosing their personal information. (Compl. ¶ 53.)  But in order to pursue "a UCL claim based on the theory that a plaintiff was deprived of the 'benefit of the bargain,'" the plaintiff must allege facts to support "[a] showing of reliance on a false or misleading representation . . . ." *Birdsong v. Apple Inc.*, No. 06-cv-2280, 2008 WL 7359917, at *6 (N.D. Cal. Jun. 13, 2008); *see also Hansen v. Newegg.com Ams., Inc.*, 25 Cal. App. 5th 714, 733 (2018) (UCL standing requires a plaintiff to allege "that he or she relied on a misrepresentation when purchasing the product, and that he or she would not have purchased the product but for the representation.") (citation omitted).

Where "a consumer purchases a [] product with no misleading or false information advertised on the product" and then successfully uses the product, "the consumer has received the benefit of the bargain and suffered no economic injury." *Hawkins v. Kellogg Co.*, 224 F. Supp. 3d 1002, 1011-12 (S.D. Cal. 2016), *appeal voluntarily dismissed* (citation omitted); *see also McGee v. Diamond Foods, Inc.*, No. 14-cv-2446, 2016 WL 816003, at *6 (S.D. Cal. Mar. 1, 2016) ("Plaintiff's purchases were not made on the basis of false or misleading representations . . . Therefore, Plaintiff has not alleged an economic injury which satisfies the UCL . . . ."); *cf.*, *Simpson v. Cal. Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1022-23 (S.D. Cal. 2013) ("Therefore, having not alleged any advertising or wording on the product that may have misled Plaintiff . . . Plaintiff has not alleged an injury premised on economic loss due to misleading information.").

Plaintiffs' cited cases do not rebut this established rule of pleading.  In all four of the cases the Opposition explicitly mentions in its discussion of economic injury, this theory applied ***only*** because the plaintiffs in each matter could plead that they relied on misrepresentations about the products at issue and were induced to buy the products at the given price that failed to deliver as promised.  *See In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1219-20 (C.D. Cal. 2017) (noting the deceptive labelling and misrepresentation that induced plaintiffs to spend money to purchase a product); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1130 (N.D. Cal. 2018) ("Plaintiff Mortensen's allegations state that he expected to receive secure email services and that he would not have signed up for the services in the absence of such assurances."); *In re Anthem,*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9.

DEF. WALMART, INC.'S REPLY
ISO MTD COMPLAINT
Case No. 3:18-cv-06678-RS

*Inc. Data Breach Litig.*, No. 15-md-2617, 2016 WL 3029783, at *32-33 (N.D. Cal. May 27, 2016) (reasoning that defendants had represented, contractually and otherwise, that they had reasonable security protections prior to data breach); and *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1224 (N.D. Cal. 2014) (reasoning that plaintiffs alleged economic injury because "they personally spent more on Adobe products than they would had they known Adobe was not providing the reasonable security Adobe represented it was providing"). (*See also* Opp'n at 20 (citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 595 (9th Cir. 2012) (finding injury in fact where plaintiffs asserted they paid more than they otherwise would have because of the defendant's "deceptive claims") and *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 802-03 (2006) (finding actual injury where plaintiffs concretely overpaid).)

Unlike the plaintiffs in their cited cases, Plaintiffs here do not allege that they were induced to purchase their DVDs by reviewing some allegedly misleading statement by Walmart. They do not allege, for example, that they reviewed and relied on some part of Walmart's terms and as a result assumed that their purchase information would not be used to personalize ads (nor can they allege as such because Walmart's Privacy Policy and incorporated Notices clearly disclosed the practices at issue, as discussed above). In fact, Plaintiffs concede that their "UCL claims here are not based on misrepresentations," and distinguish Walmart's cited cases like *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1049 (N.D. Cal. 2014), because those claims were "premised on misrepresentation." (Opp'n at 21.) The Court should take Plaintiffs at their word. Because their claim is "not based on misrepresentations," Plaintiffs cannot rely on a "benefit of the bargain" theory to supply the economic injury needed under the UCL. Indeed, the Complaint and Opposition make clear that Plaintiffs were not misled by Walmart and they received exactly what they paid for in buying their DVDs.

Plaintiffs try to distinguish Walmart's cited cases on this issue, but do not substantively address the holdings of these cases, which confirm the fatal defects of Plaintiffs' claims. Take, for example, *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 730 (N.D. Cal. 2014). There, as here, plaintiff alleged she was "denied the benefit of her bargain" because defendants allegedly disclosed her personal information, in violation of the SCA. *Id.* at 724. The *Svenson* Court aptly noted that plaintiff did not demonstrate "that what she received—the App and unauthorized disclosure of her Contact

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

DEF. WALMART, INC.'S REPLY
ISO MTD COMPLAINT
Case No. 3:18-cv-06678-RS

information—was worth less than what she allegedly bargained for." *Id.* Indeed, "[d]efendants' [alleged] business practice" did not cause plaintiff to "change[] her economic position at all." *Id.* at 730; *see also Backhaut*, 74 F. Supp. 3d at 1048-49 (dismissing plaintiffs' "benefit of the bargain" theory for failure to prove that they saw, read, or relied on a misrepresentation that induced them to purchase an Apple product); *cf. Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1049 (9th Cir. 2017) (upholding district court's dismissal of UCL claim, given that plaintiff could not show how defendant's alleged violation of California law caused economic injury, where plaintiff was not charged more and received what he paid for). The same applies here—Plaintiffs bought various movies and they got them.

## III. CONCLUSION

For all the reasons above, the Court should dismiss the Complaint in its entirety because Plaintiffs have expressly consented to the practices at issue and have suffered no economic injury of any kind.

Dated: February 7, 2019

COOLEY LLP
MICHAEL G. RHODES (116127)
WHITTY SOMVICHIAN (194463)
KYLE C. WONG (224021)
MAXWELL E. ALDERMAN (318548)

*/s/ Whitty Somvichian*
Whitty Somvichian (194463)
Attorneys for Defendant
WALMART INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

DEF. WALMART, INC.'S REPLY
ISO MTD COMPLAINT
Case No. 3:18-cv-06678-RS