UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALICIA CAPPELLO, et al.,

    Plaintiffs,

v.

WALMART INC.,

    Defendant.

Case No. 18-cv-06678-RS

**ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiffs Alicia Cappello and Catherine Mosqueda (collectively, "Plaintiffs") bring this putative class action against Walmart, Inc. for disclosing walmart.com customers' identities and video media purchases to Facebook, Inc. without their consent in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), California Civil Code section 1799.3, and California Business and Professions Code section 17200 ("UCL"). Walmart moves to dismiss, contending Plaintiffs' factual allegations in their Complaint are insufficient to state their claims for relief. For the reasons explained below, Walmart's motion is denied in part and granted in part with leave to amend.

## II. BACKGROUND[1]

Walmart operates the retail websites walmart.com and mobile.walmart.com (together

---

[1] The factual background is based on the averments in the Complaint, which must be taken as true for purposes of this motion.

"walmart.com"), where it sells a variety of consumer goods, including DVDs, Blu-ray Discs, video games, and other video media (collectively, "video media"). To take advantage of advertising and information services offered by Facebook, Walmart programmed walmart.com to include a Facebook pixel to track, among other things, the Walmart product ID of products purchased on walmart.com, including video media. A Walmart product ID is a unique identifier assigned to each Walmart product that returns the name of the associated product when searched for via walmart.com or Google. Generally, when a consumer with a Facebook account purchases video media from walmart.com, the purchase confirmation page loads and the Facebook pixel on that page, causing the purchaser's browser to send the purchased video media's product ID, along with the consumer's Facebook user ID, to Facebook's servers. Plaintiffs purchased video media from walmart.com using their internet-enabled devices in November 2016, September 2017, and November 2017. At the time of each purchase, Plaintiffs were logged into their Facebook account on the same devices. Consequently, Plaintiffs' personally identifiable video purchase information, including their Facebook IDs and the Walmart product IDs of the purchased video media were disclosed to Facebook. Plaintiffs aver they never gave Walmart written consent to disclose this information to Facebook, let alone in a form distinct and separate from any form setting forth their other legal or financial obligations, as required by the VPPA.

Plaintiffs filed their Complaint in California superior court in October 2018, and Walmart subsequently removed the case. Plaintiffs seek damages, costs, and equitable relief for Walmart's alleged violations of the VPPA, section 1799.3, and the UCL. They seek to certify a class (the "Nationwide Class" of "All persons in the United States who purchased Video Media from walmart.com within the two years immediately preceding the filing of this action and before November 28, 2017 in a transaction that resulted in the Video Media's Walmart product ID and the purchaser's Facebook ID being sent to Facebook." (Cmpl. ¶ 26.) Additionally, Plaintiffs seek to certify a subclass (the "California Subclass") of "All persons in California who purchased Video Media from walmart.com between within [sic] the applicable statutory limitations period and before November 28, 2017 in a transaction that resulted in the Video Media's Walmart

United States District Court
Northern District of California

1  product ID and the purchaser's Facebook ID being sent to Facebook." (Cmpl. ¶ 27.) Plaintiffs'
2  VPPA cause of action defines the Nationwide Class, while their section 1799.3 and UCL claims
3  define the California Subclass.

### III.  LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Id.* at 1242 (internal quotation marks omitted). When an entire complaint is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint. *Vess*, 317 F.3d at 1107. Dismissals under Rule 9(b) and Rule 12(b)(6) are treated in the same manner. *Id.* When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

## IV.  DISCUSSION

### A.  Plaintiffs' VPPA Claim

The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifiable information" concerning any consumer to any person without the "informed, written consent (including through an electronic means using the Internet) of the consumer . . . ."  §§ 2710(b)(1), (2)(B).  The written consent must be "in a form *distinct and separate* from any form setting forth other legal or financial obligations of the consumer[.]"  § 2710(b)(2)(B)(i) (emphasis added).  Plaintiffs aver Walmart never obtained the requisite written consent of the consumers in a separate stand-alone consent form.  Walmart asserts numerous counterarguments as to why Plaintiffs' Complaint is misguided, but at no point does Walmart contend that it provided consumers with a consent form dedicated *solely* to informing consumers of Walmart's intent to share their personally identifiable information with Facebook.  Contrary to Walmart's parade of horribles, the plain language of the VPPA does indeed require video tape service providers to (1) request consumers' consent to a privacy disclosure that addresses only the use of personally identifiable information connected with video purchases and no other privacy topic, and (2) obtain the act of consent separately from the consumer's agreement to the retailer's terms of use, general privacy policy, and the commercial terms of the purchase.[2]

The fact that such consent may be obtained over the Internet does not negate the statute's "distinct and separate" form requirement.  It would also not be burdensome to design a website whereby consumers must click a box confirming their consent to disclosures involving video purchases and click a separate box confirming their consent to all other applicable policies and terms.[3]  Taking Plaintiffs' allegations as true, they have stated a claim under the VPPA.

---

[2] If the statute requires a separate consent form, the act of consent by the consumer is necessarily separate from other acts of consent.

[3] As discussed in the next section, it is not appropriate to consider Walmart's Privacy Policy at this stage of litigation.  To the extent the Privacy Policy operates as a standalone consent form, however, Walmart cannot seriously contend that it does not impose obligations on the consumer, as it obligates the consumer to authorize each of the practices set forth therein as purchase terms.

**B. Plaintiffs' Section 1799.3 Claim**

Section 1799.3 of the California Civil Code prohibits persons providing video recording sales or rentals from disclosing any personal information connected with such sales or rentals to a third party without the consumer's "written consent." § 1799.3. Walmart contends Plaintiffs gave the necessary written consent. To further its argument, Walmart requests judicial notice of its exhibits, or to find that Plaintiffs necessarily relied upon the attached documents in their Complaint. These include the website's purchase confirmation page and Walmart's Terms of Use, Privacy Policy, and Notices (collectively, "Terms"). Walmart depends upon these exhibits to argue the disclosures contained therein, taken together, disclosed the alleged practices Plaintiffs challenge, and that Plaintiffs' consent to these Terms via a click-through agreement precludes their VPPA and section 17993 claims as a matter of law.

These exhibits, however, are neither judicially noticeable nor properly considered as part of the Complaint. Incorporation by reference is a judicial doctrine that prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken or doom their claims. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). A defendant may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. *Id.* at 1002; *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (holding that a court may consider documents incorporated by reference in the complaint without converting the motion to dismiss into a motion for summary judgment). Here, neither the Terms nor the purchase confirmation page form the basis of Plaintiffs' claims, nor are they referred to extensively in the Complaint.[4] Similarly, judicial notice is inappropriate as the facts contained in the exhibits cannot "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The simple act of posting something publicly on

---

[4] A single reference to the Terms regarding venue and personal jurisdiction is hardly enough to consider the entirety of the Terms incorporated into the Complaint.

the Internet is insufficient assurance of an exhibit's accuracy. Taking Plaintiffs' allegations as true, they have stated a claim under section 1799.3.

### C. Plaintiffs' UCL Claim

The UCL broadly proscribes "unfair competition," defined as "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. Each of the three UCL prongs provides a "separate and distinct theory of liability" and an independent basis for relief. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (internal quotation marks omitted). Plaintiffs only allege a UCL claim under the unlawful prong. By proscribing "any unlawful" business act or practice, the UCL "borrows" violations of other laws and treats them as unlawful practices that the UCL makes independently actionable. *Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390, 396 (2013). In borrowing requirements from other statutes, the UCL provides its own "distinct and limited equitable remedies for unlawful business practices, using other laws only to define what is 'unlawful.'" *Id.* at 397. Since a UCL action "is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). Thus, remedies for the UCL are "generally limited to injunctive relief and restitution." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999); *see also Korea Supply*, 29 Cal. 4th at 1148 ("[T]he legislature did not intend to authorize courts to order monetary remedies other than restitution in an individual action. This court has never approved of nonrestitutionary disgorgement of profits as a remedy under the UCL.").

Standing under the UCL is limited to those who have "suffered injury in fact and [have] lost money or property as a result of . . . unfair competition." Cal. Bus. & Prof. Code § 17204. Accordingly, to bring a UCL action, a private plaintiff must be able to show economic injury caused by unfair competition. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). In other words, if Plaintiffs cannot allege both that they suffered injury in fact *and* that they lost money or property as a result of an unlawful, unfair, or fraudulent business practice, then they lack statutory standing to sue under the UCL. *Id.* at 323-24. The California Supreme Court recognizes there are "innumerable ways" to demonstrate economic injury from unfair competition. *Id.* at 323.

In *Kwikset*, the court provided examples, such as where a plaintiff (1) surrenders in a transaction more, or acquires in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. *Id.* This list is not exhaustive, however, and a private plaintiff need only establish that he or she has "personally suffered such harm." *Id.*

Plaintiffs have not adequately alleged loss of money or property caused by unfair competition. The Complaint could proceed only if Plaintiffs' personal information had inherent economic value and the mere disclosure of such data constitutes a loss of money or property. Several courts, however, have held that the unauthorized release of "personal information" does not constitute a loss of money or property for purposes of establishing standing under the UCL. *See, e.g.*, *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 730 (N.D. Cal. 2014) ("Plaintiff has not alleged any facts showing that Defendants' business practice . . . changed her economic position at all."); *In re iPhone Application Litig.*, No. 11-md-02250-LHK, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) (finding no loss of money or property where plaintiffs, users of mobile devices, alleged that defendants violated their privacy rights by allowing third-party application developers to collect and make use of their personal information for commercial purposes, without user consent or knowledge); *In re Google Inc. Street View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067, 1086 & n.14) (N.D. Cal. 2011) (holding allegations of an invasion of privacy were insufficient to establish UCL statutory standing and that a plaintiff's personal information did not constitute property under the UCL); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008) (finding no loss of money or property where job applicant alleged that employer negligently permitted laptops containing his unencrypted personal information to be stolen), *aff'd*, 380 F. App'x 689, 692 (9th Cir. 2010). Therefore, Plaintiffs must allege more than a loss of personal information to establish standing under the UCL.

Further, Plaintiffs' claim is deficient with regard to causation. They appear to argue that had Walmart properly followed the law, namely the VPPA and section 1799.3, they would have

been made aware of the disclosure of their personal information, and thereby would not have paid or would have paid less for the products they purchased from Walmart. This mirrors the "benefit of the bargain" theory raised in UCL claims based on misrepresentations by the defendant. *See, e.g.*, *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033 (2014). The California Supreme Court in *Kwikset* recognized economic injury where a plaintiff surrendered in a transaction more, or acquired in a transaction less, than he or she otherwise would have. *Kwikset*, 51 Cal. 4th at 323. That said, the Complaint here is missing allegations that Plaintiffs relied on any misrepresentation by Walmart. Indeed, they expressly disclaim that their UCL claim is based on misrepresentations in their Opposition. (Opp'n at 21.) In effect, Plaintiffs are averring Walmart failed to disclose a material fact prior to their purchases, while simultaneously disclaiming they detrimentally relied on any misrepresentations made by Walmart. More is needed under California law.

California courts have held that when the "unfair competition" underlying a plaintiff's UCL claim consists of a defendant's misrepresentation or omission, a plaintiff must have actually relied on the misrepresentation or omission, and suffered economic injury as a result of that reliance, to have standing to sue. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). California courts have subsequently extended the actual reliance requirement to claims brought under the UCL's unlawful prong to the extent "the predicate unlawful conduct is based on misrepresentations." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1355 (2010); *accord Kwikset*, 51 Cal. 4th at 327. Accordingly, Plaintiffs must plead what misrepresentation they actually relied upon to their detriment in order to allege causation under the UCL. *See In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1219-20 (C.D. Cal. 2017) (holding plaintiffs had UCL standing where they alleged they would not have purchased or would have paid less for defendant's smart televisions had defendant properly disclosed its consumer data collection and disclosure practices). Plaintiffs' UCL claim is dismissed with leave to amend.

## V. CONCLUSION

For all of the foregoing reasons, Walmart's motion to dismiss is denied with respect to Plaintiffs' VPPA claim and section 1799.3 claim. Walmart's motion is granted with respect to

Plaintiffs' UCL claim with leave to amend. In the event that Plaintiffs elect to file an amended complaint, they must do so within 21 days of the date of this order.

**IT IS SO ORDERED**.

Dated: April 5, 2019

RICHARD SEEBORG
United States District Judge