Ray E. Gallo (SBN 158903)
rgallo@gallo.law
Dominic R. Valerian (SBN 240001)
dvalerian@gallo.law
GALLO LLP
1604 Solano Ave., Suite B
Berkeley, CA 94707
Phone: 415.257.8800

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ALICIA CAPPELLO and CATHERINE MOSQUEDA, for themselves and all others similarly situated,

Plaintiffs,

vs.

WALMART, INC., a Delaware corporation; and DOES 1-50, inclusive,

Defendants.

Case No. 3:18-cv-06678-RS

Hon. Richard Seeborg

**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF BASED ON:**

1. VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT (18 U.S.C. § 2710)
2. VIOLATION OF CAL. CIV. CODE. § 1799.3
3. VIOLATION OF THE UNFAIR COMPETITION LAW (CAL. BUS. & PROF CODE § 17200 ET SEQ.)

**DEMAND FOR JURY TRIAL**

**CLASS ACTION**

## NATURE OF ACTION

1. Plaintiffs Alicia Cappello and Catherine Mosqueda bring this class action against Walmart, Inc. ("Walmart") for violating the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA"), Cal. Civ. Code § 1799.3, and the Unfair Competition Law, Cal. Bus. and Prof. Code § 17200 *et seq.* (the "UCL") by disclosing walmart.com customers' identities and video media purchases to Facebook, Inc. ("Facebook").

2. The VPPA prohibits "video tape service providers" like Walmart from knowingly disclosing consumers' personally identifiable information , including "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider," without express written consent in a stand-alone consent form.

3. Cal. Civ. Code § 1799.3 prohibits video sellers from disclosing "any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual."

4. Walmart installed an advertising tool called a Facebook pixel on its retail website walmart.com that systematically disclosed to Facebook: (1) walmart.com customers' Facebook ID's, and (2) the Walmart product ID's of the products those customers purchased.

5. When a walmart.com customer purchased a DVD, Blu-ray Disc, video game, or other video media (all jointly "Video Media"), this disclosure to Facebook violated the VPPA and Cal. Civ. Code § 1799.3 because it identified the consumer to Facebook as having requested or obtained specific video materials from Walmart.

6. Walmart knew it was disclosing and intended to disclose Video Media purchasers' personal information to Facebook based on, among other things, the functionality of the pixel, including its enablement of individually targeted advertising based on the specific products specific customers purchased on walmart.com. Walmart installed the pixel for this purpose. Walmart also knew the requirements of the VPPA. Walmart nevertheless failed to obtain the requisite express written consent of the customer in a separate stand-alone consent form beforehand.

7. Plaintiffs seek an injunction prohibiting Walmart's unlawful disclosures, mandatory liquidated damages of $2,500 per violation and punitive damages under the VPPA, a civil penalty of up to $500 per violation under Cal. Civ. Code § 1799.3, and attorneys' fees.

**Parties**

8. Plaintiffs are individuals who purchased Video Media from walmart.com and never authorized Walmart to disclose their Video Media purchase information to Facebook.

9. Plaintiff Alicia Cappello is an individual who at all relevant times resided in Bakersfield, California. Plaintiff Catherine Mosqueda is an individual who at all relevant times resided in Yreka, California.

10. Defendant Walmart, Inc. is a Delaware corporation with its principal place of business in Bentonville, Arkansas.

11. Plaintiffs are unaware of the true identities of those Defendants sued herein as DOES 1 through 50, inclusive, and therefore sue these Defendants by these fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to show the true names and capacities of the fictitiously named Defendants if and when ascertained. Plaintiffs are informed and believe that each fictitiously named Defendant is liable in some manner for the injuries and damages alleged by Plaintiffs.

**Jurisdiction**

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs assert a federal law claim under the VPPA, 18 U.S.C. § 2710. This Court is authorized to exercise supplemental jurisdiction over Plaintiffs' state law claims as they each "form part of the same case or controversy." 28 U.S.C. § 1367.

**Venue**

13. Venue is proper in this Court under 28 USC § 1441(a) and 28 U.S.C. § 1446(a) because the original action was pending before the Superior Court of California, County of Alameda.

**Facts Common to All Claims**

14. Walmart operates the retail websites walmart.com and mobile.walmart.com (together "walmart.com"), where it sells a variety of consumer goods, including Video Media.

15. To take advantage of advertising and information services offered by Facebook, Walmart programmed walmart.com to include a Facebook pixel that automatically discloses the Walmart product ID of all products purchased on walmart.com, including Video Media, to Facebook.

16. A Facebook pixel is an analytics tool that tracks consumers' actions on Facebook advertisers' websites and reports them to Facebook. For an advertiser to incorporate a Facebook pixel into its website, the advertiser must add the code for the pixel to its website. To obtain the code for the pixel, the advertiser tells Facebook which website events it wants to track (e.g. purchases, additions to cart, product views) and Facebook returns corresponding Facebook pixel code for the advertiser to incorporate into its website.

17. Walmart set up its Facebook pixel to track, among other things, the Walmart product ID of products purchased on walmart.com, including Video Media. A Walmart product ID is a unique identifier assigned to each Walmart product that returns the name of the associated product when searched for via walmart.com or Google. Generally, when a consumer with a Facebook account purchases Video Media from walmart.com the purchase confirmation page loads and the Facebook pixel on that page causes the purchaser's browser to send the purchased Video Media's product ID, and the consumer's Facebook ID, to Facebook's servers through a message called a "GET Request."[1]

18. The GET Request to Facebook includes the contents of any non-expired Facebook "cookies" stored on the user's computer. A cookie is a small file sent from a website and stored on the user's computer by the user's web browser while the user is browsing. Multiple Facebook cookies enable Facebook to identify the user associated with the GET request, including a "c_user" cookie that contains the user's Facebook ID. A Facebook ID is a unique and persistent

[1] A "GET Request" is a message sent from a web browser to a server, requesting information for display on the computer or device.

identifier that Facebook assigns to each user. With it, anyone can (or during the relevant time frame, could) look up the user's Facebook profile and name.

19. When a Facebook user with one or more personally identifiable Facebook cookies on his or her browser purchases Video Media from walmart.com, Walmart, through its website code, causes the purchaser's identity and Video Media purchases to be transmitted to Facebook by the user's browser. This transmission is not the purchaser's decision, but results from Walmart's purposeful use of its Facebook tracking pixel by incorporation of that pixel and code into walmart.com. Walmart easily could program walmart.com so that this information is not automatically transmitted to Facebook when a customer purchases Video Media.

20. At all relevant times, Walmart knew that the Facebook pixel disclosed customers' identities and purchases to Facebook. This was evident from, among other things, the functionality of the pixel, including that it enabled Walmart to show targeted advertising to its customers based on the products those customers had previously purchased on walmart.com, including Video Media purchases. This targeting capability demonstrates Facebook's and Walmart's intended purpose and practice of combining Facebook ID's and product ID's to identify which users purchased which products. Representative statements from Facebook to advertisers like Walmart describing the targeting and matching functions the Pixel enables include:

a. "Using the Facebook Pixel—a snippet of code you install on your website—you can create a custom audience of people who have visited your website. You can even use the website traffic data to show people ads for things they've shown interest in on your website."[2]

b. "When someone visits your website and takes an action (for example, buying something), the Facebook pixel is triggered and reports this action. This way, you'll know when a customer took an action after seeing your Facebook ad. You'll also be able to reach this customer again by using a custom audience."[3]

---

[2] Facebook Business, https://www.facebook.com/business/learn/facebook-ads-reach-existing-customers# (last verified by counsel for plaintiff on Jan. 31, 2018).

[3] Facebook Business, https://www.facebook.com/business/learn/facebook-ads-pixel (last verified by counsel for plaintiff on Jan. 31, 2018).

c. “One great way to reach real people is with Custom Audiences from your website. These identify people with Facebook ID’s who have visited specific product pages or added products to a cart. Once a Custom Audience pixel is placed on your website, you can use that data to remarket to visitors across all their devices.”[4]

d. “The Facebook pixel has an advanced matching feature that enables you to send your customer data through the pixel to match more website actions with Facebook users. With this additional data, you can report and optimize your ads for more conversions and build larger re-marketing audiences. You can pass the customer identifiers, such as email, phone number that you collect from your website during the checkout, account sign-in, or registration process as parameters in the pixel. Facebook then uses this information to match pixel events with Facebook users when the Facebook cookie is not present on the browser that fires the pixel.”[5]

21. As a condition of purchase, walmart.com customers, including Plaintiffs, agreed to Walmart’s Privacy Policy and Terms of Use. The Terms of Use expressly incorporate the Privacy Policy. The Terms of Use, including the Privacy Policy incorporated therein, formed a contract between Walmart and walmart.com customers, including Plaintiffs.

22. Plaintiffs and other walmart.com customers performed this contract by, among other things, paying for the goods they purchased on walmart.com.

23. When Plaintiffs purchased the at-issue Video Media, Walmart’s Privacy Policy stated:

> **Marketing Preferences**
>
> When we are sending marketing communications to you, we use the following standards:
>
> • We use an opt-in standard for phone and text messages. *We use an opt-in standard for sharing personal information with companies outside our corporate family of companies for their use in direct marketing, such as sending you promotions. Opt-in means we will only conduct the activity with your affirmative consent.*
>
> • We use an opt-out standard for email or for other communications,

---

[4] Facebook Business, https://www.facebook.com/business/a/performance-marketing-strategies (last verified by counsel for plaintiff on Jan. 31, 2018).

[5] Facebook for Developers, https://developers.facebook.com/docs/facebook-pixel/pixel-with-ads/conversion-tracking (last verified by counsel for plaintiff on Jan. 31, 2018).

> such as postal mail. Opt-out means we may contact you, but will stop upon your request (as described below).

(Emphasis added).

24. Walmart's disclosure of Plaintiffs' Video Media purchase information to Facebook breached the italicized term of Walmart's Privacy Policy because: (a) Facebook is outside Walmart's corporate family of companies, (b) the Walmart product IDs of the Video Media Plaintiffs purchased combined with Plaintiffs' Facebook IDs constitutes personal information, (c) Walmart shared Plaintiffs' Video Media purchase information with Facebook for Facebook's use in direct marketing (*i.e.* for Facebook to provide direct marketing services to Walmart), and (d) Plaintiffs did not opt-in to the sharing of their Video Media purchase information with Facebook.

25. Walmart continues to engage in the unlawful conduct alleged herein, so Plaintiffs and the general public face continuing, present, adverse effects and the likelihood of future injury from Walmart's conduct.

**Plaintiffs**

26. Plaintiff Alicia Cappello purchased "Prometheus" on Blu-Ray and "Alien Covenant" on Blu-Ray from walmart.com on or about September 23, 2017, using an internet-enabled device. Cappello purchased "Jeepers Creepers" on Blu-Ray from walmart.com on or about November 24, 2017, using her internet-enabled device. At the time of each purchase, Plaintiff Cappello was logged into her Facebook account on that same device. Consequently, Plaintiff Cappello's personally identifiable video purchase information, including her Facebook ID and the Walmart product ID of the purchased Video Media were disclosed to Facebook pursuant to the systematic processes described above.

27. Plaintiff Catherine Mosqueda purchased "Independence Day Resurgence" on Blu-Ray and DVD, "Star Trek Beyond" on Blu-Ray and DVD, and "Finding Dory" on Blu-Ray and DVD from walmart.com on or about November 24, 2016, using her internet-enabled device. Mosqueda purchased "The Land Before Time: Complete Collection" on Blu-Ray, from walmart.com on or about November 26, 2017, using her internet-enabled device. She purchased "UNCHARTED: The Nathan Drake Collection" and "LEGO: Jurassic World" video games for

Playstation 4 from walmart.com on or about November 24, 2017, using her internet-enabled device. At the time of each purchase, Plaintiff Mosqueda was logged into her Facebook account on that same device. Consequently, Plaintiff Mosqueda's personally identifiable video purchase records information, including her Facebook ID and the Walmart product ID of the purchased Video Media were disclosed to Facebook pursuant to the systematic processes described above.

28. Plaintiffs never gave Walmart any written consent to disclose their Video Media purchases to Facebook, let alone the consent required by the VPPA, *i.e.*, written consent in a form distinct and separate from any form setting forth their other legal or financial obligations. Plaintiffs did not opt-in to Walmart sharing their personal information with third parties either.

29. Plaintiffs and the proposed Class face a threat of imminent or actual harm because, *inter alia*, they cannot make an informed decision about whether to purchase Video Media from Walmart in the future without knowing whether Walmart has ceased its unlawful practices.

## **<u>Class Action Allegations</u>**

30. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and (b)(3), Plaintiffs bring this action for themselves and the following class (the "Class"):

> All persons in the United States who purchased Video Media from walmart.com on or after October 4, 2016 and before November 28, 2017 in a transaction that resulted in the Video Media's Walmart product ID and the purchaser's Facebook ID being sent to Facebook.

31. Plaintiffs seek certification of the following subclass (the "California Subclass"):

> All persons in California who purchased Video Media from walmart.com on or after October 4, 2017 and before November 28, 2017 in a transaction that resulted in the Video Media's Walmart product ID and the purchaser's Facebook ID being sent to Facebook.

32. Excluded from the Class and California Subclass are: (1) all officers and directors of Walmart and its parents, subsidiaries, and affiliates, and (2) all judges assigned to hear any aspect of this litigation and their immediate family members.

33. Plaintiffs reserve the right to modify or amend the definition of the proposed Class and California Subclass before the Court determines whether certification is appropriate.

34. <u>Numerosity</u>: The potential members of the Class and California Subclass are so numerous that joinder of all the members of the Class is impracticable. Plaintiffs are informed and

believe that the Class and California Subclass each includes at least thousands of members.

35. Commonality: There are questions of law and fact common to the Class that predominate over any questions affecting only individual members of the Class, including:

a. What information Walmart disclosed to Facebook concerning Class members' Video Media purchases;

b. Whether the information Walmart disclosed to Facebook concerning Class members' Video Media purchases constitutes personally identifiable information under the VPPA;

c. Whether Walmart's disclosure of Class members' personally identifiable information to Facebook was knowing under the VPPA;

d. Whether Class members consented to Walmart's disclosure of their personally identifiable information to Facebook in the manner required by 18 U.S.C. § 2710(b)(2)(B); and

e. Whether the Class is entitled to damages as a result of Walmart's conduct.

36. There are questions of law and fact common to the California Subclass that predominate over any questions affecting only individual members of the California Subclass, including:

a. Whether the information Walmart disclosed to Facebook concerning California Subclass members' Video Media purchases constitutes "personal information or the contents of any record, including sales or rental information, which is prepared or maintained by" Walmart;

b. Whether Walmart's disclosure of California Subclass members' personal information or record contents to Facebook was willful under Cal. Civ. Code § 1799.3(c);

c. Whether California Subclass members provided written consent to Walmart's disclosure of their personal information or record contents to Facebook; and

d. Whether the Class is entitled to civil penalties under Cal. Civ. Code § 1799.3(c) as a result of Walmart's conduct.

37. Typicality: Plaintiffs' claims are typical of Class members' and California Subclass members' claims because Plaintiffs each purchased Video Media from walmart.com in

transactions that resulted in the Video Media's product ID's and purchaser's Facebook ID being sent to Facebook without the requisite consent.

38. Adequacy of Representation: Plaintiffs are all members of the Class and California Subclass, Plaintiffs' interests do not conflict with the interests of other Class members, and Plaintiffs' counsel are competent and experienced in litigating consumer class actions.

39. Superiority of Class Action: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class or California Subclass members is not practicable, and questions of law and fact common to the Class and California Subclass predominate over any questions affecting only individual members of the Class. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

40. Defendant Walmart has acted on grounds that apply generally to the Class and the California Subclass, so that final injunctive relief is appropriate respecting the Class as a whole and the California Subclass as a whole.

41. Injunctive relief is necessary to prevent further unlawful conduct by Walmart. Money damages, alone, could not provide adequate and complete relief. Injunctive relief is necessary to restrain Walmart from continuing to commit its illegal and unfair violations of privacy.

## Claims

### One
### Violation of the Video Privacy Protection Act, 18 U.S.C. § 2710
### (On behalf of Plaintiffs and the Class)

42. Plaintiffs incorporate all preceding paragraphs.

43. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifiable information" concerning any consumer to any person without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C § 2710.

44. Walmart is a "video tape service provider" as defined in 18 U.S.C. §2710(a)(4) because it is engaged in the business of selling and delivering audiovisual materials including,

without limitation, DVDs and Blu-ray Discs, and those sales and deliveries affect interstate commerce.

45. All Plaintiffs and Class members are "consumers" as defined in 18 U.S.C. §2710(a)(1) because they purchased goods from Walmart.

46. Walmart knowingly disclosed personally identifiable information concerning Plaintiffs and Class members to Facebook, including their Facebook ID's and the Walmart product ID's of the Video Media that each respective Class member purchased.

47. This information constitutes personally identifiable information under 18 U.S.C. §2710(a)(3) because it identified each Plaintiff and Class member to Facebook as an individual who requested or obtained named Video Media from Walmart.

48. Walmart knew that these disclosures identified Plaintiffs and Class members to Facebook as individuals having requested or obtained specific Video Media from Walmart because, *inter alia*, Walmart chose, programmed, and intended for Facebook to receive the Walmart product ID's of the products customers purchased on walmart.com and Walmart understood that Facebook could then, to advance Walmart's business purposes and otherwise, serve targeted ads to individuals based on the products they purchased, which necessarily required Facebook to know which customers purchased which products. Plaintiffs are informed and believe that Walmart knew its disclosures identified Plaintiffs and Class members to Facebook as individuals having requested or obtained specific video materials from Walmart for other reasons that are known to Walmart and are not publicly available.

49. Plaintiffs and Class members did not provide to Walmart and Walmart did not otherwise obtain their informed written consent, in a form distinct and separate from any form setting forth their other legal or financial obligations, to disclose Plaintiffs' and Class members' Video Media purchases to Facebook.

**Two**
**Violation of Cal. Civ. Code § 1799.3**
**(On Behalf of Plaintiffs and the California Subclass)**

50. Plaintiffs incorporate all preceding paragraphs.

51. Cal. Civ. Code § 1799.3(a) prohibits a "person providing video recording sales"

from disclosing "any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual."

52. Walmart is a "person providing video recording sales or rental services" under Cal. Civ. Code § 1799.3(a) because it is engaged in the business of selling video recordings, including, without limitation, DVDs, Blu-ray Discs, and video games.

53. Walmart willfully disclosed information that identified Plaintiffs and California Subclass members to Facebook as individuals having requested or obtained specific video materials from Walmart, including their Facebook ID's and the Walmart product ID's of the Video Media that they purchased. This information constitutes: (a) the personal information of Plaintiffs and California Subclass members, and/or (b) the contents of a record concerning Plaintiffs and California Subclass members that Walmart prepared or maintained.

54. Plaintiffs and California Subclass members did not consent, in writing or otherwise, to Walmart's disclosure of their Video Media purchases to Facebook. Walmart's disclosure of this information to Facebook therefore violated Cal. Civ. Code § 1799.3(a).

**Three**
**Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code. § 17200, *et seq*.**
**(On Behalf of Plaintiffs and the California Subclass)**

55. Plaintiffs incorporate all preceding paragraphs.

56. The UCL, Cal. Bus. and Prof. Code § 17200 *et seq.*, prohibits unfair, unlawful, and fraudulent business practices.

57. Walmart violated the UCL's unfair prong by systematically breaching its Privacy Policy and Terms of Use by sharing walmart.com customers' personal information with Facebook for Facebook's use in direct marketing without their opt-in consent as alleged above.

58. Walmart's systematic breach of its standardized contract with walmart.com customers constitutes an unfair business practice because: (1) it is immoral, unethical, oppressive, unscrupulous, and substantially injurious and the injury to Plaintiffs and California Subclass members outweighs the practice's utility; and (2) it violates the United States' and California's public policy of protecting the personal privacy of Video Media purchasers as reflected in the

VPPA and Cal. Civ. Code § 1799.3.

59. Plaintiffs and California Subclass members suffered injury in fact and lost money or property as a result of Walmart's violations of its Terms of Use and Privacy Policy in that Plaintiffs and California Subclass members paid Walmart money to fulfill the contractual obligations set forth in Walmart's Terms of Use and Privacy Policy and Walmart failed to fulfill those obligations.

60. Walmart violated the UCL's unlawful prong by violating its Privacy Policy knowingly and willfully or, in the alternative, negligently and materially in violation of Cal. Bus. & Prof. Code § 22576. As alleged above, Plaintiffs and California Subclass members suffered injury in fact and lost money or property as a result of Walmart's violations of its Terms of Use and Privacy Policy.

61. Walmart violated the UCL's fraudulent prong by failing to disclose to Plaintiffs and other California Subclass members, prior to their Video Media purchases, the material fact that it would disclose the product IDs of their Video Media purchases to Facebook.

62. A reasonable consumer would deem Walmart's disclosure of the product IDs of her Video Media purchases to Facebook important in determining whether to purchase Video Media from walmart.com because it infringes upon her personal privacy and contravenes her reasonable expectation that Walmart would not disclose her Video Media purchases to a third party for advertising purposes without permission. Likewise, a reasonable consumer would value Video Media available through walmart.com less if she knew that Walmart disclosed customers' Video Media purchases to Facebook.

63. Walmart had exclusive knowledge of this fact and it was not known or reasonably accessible to the Plaintiffs or other California Subclass members. This information was not disclosed in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer as the VPPA requires. *See* 18 U.S.C. § 2710(2)(B)(i). Nor was it disclosed in Walmart's Privacy Policy or Terms of Use or otherwise reasonably accessible to an ordinary consumer.

64. Plaintiffs detrimentally relied on Walmart's failure to disclose that it would share

the product IDs of their Video Media purchases with Facebook. Had Walmart disclosed to Plaintiffs—in a distinct and separate form as the VPPA requires—the fact that it would disclose the product IDs of their Video Media purchases to Facebook, Plaintiffs would not have paid Walmart as much, or at all, for the Video Media they purchased. The difference between: (a) what Plaintiffs paid Walmart for the Video Media they purchased; and (b) what they would have been willing to pay Walmart for the Video Media had Walmart disclosed the omitted information as required by the VPPA, constitutes economic injury.

## Prayer for Relief

**WHEREFORE,** Plaintiffs pray for relief and judgment as follows:

1. For public injunctive relief under the VPPA requiring Walmart to stop disclosing Facebook ID's and Walmart product ID's to Facebook when consumers purchase Video Media on walmart.com.
2. For public injunctive relief under the UCL and Cal. Civ. Code § 1799.3 requiring Walmart to stop disclosing Facebook ID's and Walmart product ID's to Facebook when consumers in California purchase Video Media on walmart.com.
3. For liquidated damages of at least $2,500 per violation to each Plaintiff and Class member pursuant to 18 U.S.C. § 2710(c)(2)(A).
4. For an award of punitive damages to each Plaintiff and Class member pursuant to 18 U.S.C. § 2710(c)(2)(B).
5. For a civil penalty not to exceed $500 per violation to each Plaintiff and California Subclass member pursuant to Cal. Civ. Code § 1799.3(c).
6. For attorney's fees and expenses pursuant to all applicable laws including, without limitation, 18 U.S.C. § 2710(c)(2)(C) and Code Civ. Proc. § 1021.5.
7. For both pre- and post-judgment interest on any amounts awarded.
8. For such other and further relief as the Court deems just and proper.

///

///

DATED: April 25, 2019

**RESPECTFULLY SUBMITTED,**

GALLO LLP

By: */s/ Ray E. Gallo*
Ray E. Gallo

**DEMAND FOR JURY TRIAL**

Plaintiffs and each of them, for themselves and all others similarly situated, hereby demand a jury trial of all issues, claims, and defenses, and of all other matters so triable.

DATED: April 25, 2019

**RESPECTFULLY SUBMITTED,**

GALLO LLP

By: */s/ Ray E. Gallo*
Ray E. Gallo