United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA CAPPELLO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WALMART INC., <br><br> Defendant. | Case No. 18-cv-06678-RS <br><br> **ORDER DENYING MOTION TO DISMISS CERTAIN CLAIMS IN FIRST AMENDED COMPLAINT** |

## I. INTRODUCTION

Plaintiffs Alicia Cappello and Catherine Mosqueda (collectively, "Plaintiffs") bring this putative class action against Walmart, Inc. for disclosing walmart.com customers' identities and video media purchases to Facebook, Inc. without their consent in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), California Civil Code section 1799.3, and California Business and Professions Code section 17200 ("UCL"). Plaintiffs' VPPA and Section 1799.3 claims survived a prior motion to dismiss, but their UCL claim did not. (Dkt. 36.) Plaintiffs' filed a First Amended Complaint ("FAC") containing a revised UCL claim, and Walmart has again moved to dismiss this claim with prejudice, contending Plaintiffs' factual allegations remain insufficient to state a claim for relief under the UCL. For the reasons explained below, Walmart's motion is denied.

## II. BACKGROUND[1]

Walmart sells a variety of video media—including DVDs, video games, and related consumer goods—through its retail websites walmart.com and mobile.walmart.com (together "walmart.com"). Walmart allegedly embedded in walmart.com a Facebook pixel, a sequence of code designed to track customer purchases and to deliver that purchase information along with the customers' Facebook user IDs back to Facebook's servers. Plaintiffs aver they never gave Walmart written consent to disclose this video media purchase information to Facebook in a separate form as required by the VPPA.

Plaintiffs filed suit in California superior court, and Walmart removed the case to federal court. Plaintiffs seek damages, costs, and equitable relief for Walmart's alleged violations of the VPPA, Section 1799.3, and the UCL, and they seek to certify both a "Nationwide Class" and a "California Subclass." Plaintiffs bring their UCL claim on behalf of themselves and the California Subclass, defined as: "All persons in California who purchased Video Media from walmart.com on or after October 4, 2016 and before November 28, 2017 in a transaction that resulted in the Video Media's Walmart product ID and the purchaser's Facebook ID being sent to Facebook."[2]

Walmart moved to dismiss the original Complaint in its entirety, and after full briefing and oral argument, the Court denied Walmart's motion as to Plaintiffs' VPPA and Section 1799.3 claims and granted it as to the UCL claim. The UCL claim was dismissed on two grounds. First, Plaintiffs had not established that they suffered any economic injury as required for standing under the UCL. Second, Plaintiffs had failed to show causation, because they disclaimed that they detrimentally relied on any misrepresentations by Walmart. Plaintiffs filed a FAC again containing three causes of action arising under three statutes: the VPPA, Section 1799.3, and the

---

[1] The facts of this case are set forth in this Court's prior order denying in part and granting in part the first motion to dismiss and need not be repeated at length here. The factual background is based on averments in the FAC, which must be taken as true for purposes of this motion.

[2] Plaintiffs' reference to "October 4, 2017" instead of "October 4, 2016" in the FAC appears to be a mistake and is assumed to be such here. (Dkt. 41 at ¶ 31.)

ORDER DENYING MOTION TO DISMISS CERTAIN CLAIMS
CASE NO. 18-cv-06678-RS

2

1  UCL.  Walmart moves to dismiss with prejudice only the amended UCL claim.

### III.  LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  This standard asks for "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense."  *Id.* at 679.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint.  *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011).  Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory."  *Id.* at 1242 (internal quotation marks omitted).  When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017).  "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim."  *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

### IV.  DISCUSSION

The UCL broadly proscribes "unfair competition," defined as "any unlawful, unfair or fraudulent business act or practice . . . ."  Cal. Bus. & Prof. Code § 17200.  Each of the three UCL prongs provides a "separate and distinct theory of liability" and an independent basis for relief.  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (internal quotation marks omitted).  Plaintiffs' FAC alleges a UCL claim under all three prongs, but Plaintiffs now only

defend their UCL claim under the unlawful and unfair prongs.[3]  As an initial matter, a plaintiff must establish standing to bring a claim under the UCL, which Plaintiffs failed to do in their original Complaint but which they properly allege in the FAC.

**A.  Plaintiffs' Standing Under the UCL**

Standing under the UCL is limited to those who have "suffered injury in fact and [have] lost money or property as a result of . . . unfair competition." Cal. Bus. & Prof. Code § 17204. Accordingly, to bring a UCL action, a private plaintiff must be able to show economic injury caused by unfair competition. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).  In other words, if Plaintiffs cannot allege both that they suffered injury in fact *and* that they lost money or property as a result of an unlawful, unfair, or fraudulent business practice, then they lack statutory standing to sue under the UCL.  *Id.* at 323-24.  The California Supreme Court recognizes there are "innumerable ways" to demonstrate economic injury from unfair competition.  *Id.* at 323. In *Kwikset*, the court provided examples, such as where a plaintiff (1) surrenders in a transaction more, or acquires in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.  *Id.*  This list is not exhaustive, however, and a private plaintiff need only establish that he or she has "personally suffered such harm."  *Id.*

Plaintiffs' original Complaint failed to establish both economic injury and causation. Plaintiffs did not establish the shared personal information—namely their video purchase history—had economic value.  Further, Plaintiffs' "benefit of the bargain" theory—an alternative way to plead economic injury and causation—was likewise unsuccessful because Plaintiffs had

---

[3] In Plaintiffs' Opposition to Motion to Dismiss Certain Claims in the FAC, they concede to dismissal of their fraudulent prong UCL claim in light of the Ninth Circuit's recent decision in *Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018), which held that a seller of goods has a duty to disclose only product defects that relate to the "central functionality" of the product or create a safety risk. (Dkt. 44 at 5.)  Therefore, Plaintiffs' fraudulent prong UCL claim is dismissed with prejudice.

not relied on the alleged material misrepresentation.  Without establishing reliance, causation failed.  If Plaintiffs had not relied on the material representation, it could not have caused them economic injury by having compelled them to pay more or receive less than they otherwise would have.

Plaintiffs' FAC again alleges economic injury and causation under a benefit of the bargain theory, but this time, Plaintiffs' argument is based not on a misrepresentation but rather on Walmart's alleged breach of its Privacy Policy that governed the transactions at issue.  By failing to fulfill its contractual obligations under its Privacy Policy (which was expressly incorporated in the Terms of Use), Walmart allegedly failed to confer on Plaintiffs the benefit of the bargain, thereby causing them economic injury.  Plaintiffs further allege that this breach of contract was a violation of California Business and Professions Code § 22576 ("Section 22576"), which prohibits a commercial website operator from "knowingly and willfully" or "negligently and materially" failing to comply with the provisions of its posted privacy policy.

As noted in the Court's prior order, a "benefit of the bargain" approach to establishing UCL standing is rooted in the California Supreme Court's recognition that a plaintiff may demonstrate economic injury from unfair competition by establishing he or she "surrender[ed] in a transaction more, or acquire[d] in a transaction less, than he or she otherwise would have." *Kwikset*, 51 Cal. 4th at 323.  When the alleged unfair competition is premised on a defendant's misrepresentation, however, a plaintiff must allege he actually relied on that misrepresentation to have standing under the UCL.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1355 (2010); *accord Kwikset*, 51 Cal. 4th at 326-7.  Because Plaintiff's prior "benefit of the bargain" argument outlined in their initial Complaint was premised on a misrepresentation, reliance was required but found lacking, which defeated standing.

When a plaintiff alleges a different type of unfair competition not based on a misrepresentation, however, courts have dispensed with the actual reliance requirement.  *See Svenson v. Google, Inc.*, No. 13-cv-04080-BLF, 2015 WL 1503429, at \*9-10 (N.D. Cal. April 1,

ORDER DENYING MOTION TO DISMISS CERTAIN CLAIMS
CASE NO. 18-cv-06678-RS

1   2015) ("[Plaintiff's] unlawful prong claim alleges in a straightforward manner that Google
violated its own privacy policies in violation of California Business and Professions Code
§ 22576. No reliance is required for a violation of § 22576."); *Kissel v. Code 42 Software, Inc.*,
No. 8:15-cv-01936, 2016 WL 7647691, at *8 (C.D. Cal. Apr. 14, 2016) ("Following *Tobacco II
Cases* and *Kwikset*, courts have used a relaxed causation standard where a UCL claim does not
sound in fraud. . . . Given that [Plaintiff's] claims do not sound in fraud, we similarly decline to
require reliance as to her allegations of causation.").

Because Plaintiffs now ground their argument for UCL standing on a breach of the contractual privacy protections governing the sales in violation of Section 22576, this constitutes a non-misrepresentation-based argument that does not require a showing of reliance. So long as Plaintiffs have adequately alleged Walmart breached the terms of its privacy agreement, therefore, Plaintiffs have standing under the UCL. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-md-2617-LHK, 2016 WL 3029783, at *13, 30 (finding defendant's breach of its privacy policies as incorporated into customers' insurance contracts deprived plaintiffs of the benefit of their bargain and therefore caused economic injury sufficient to establish UCL standing).

Walmart's arguments that *Svenson* and *Anthem* are outlier cases and at odds with this Court's prior order are unavailing. In *Svenson*, the court declined to dismiss a UCL claim based on Google's failure to abide by the contractual terms of its privacy policy in violation of Section 22576, without requiring actual reliance on any specific policy provision. *Svenson*, 2015 WL 1503429, at *9-10. In *Anthem*, Plaintiffs' UCL claim alleged economic injury based on Anthem's breach of its privacy policies governing Plaintiffs' insurance contracts. *In re Anthem*, 2016 WL 3029783, at *10. These averments were deemed sufficient to establish "benefit of the bargain" losses and therefore satisfy the economic injury requirement for standing under the UCL. *Id.*, at *30. While not binding, these two recent cases are both apposite and point to the correct outcome in this case. They establish that an alleged breach of the contractual terms of a privacy policy is sufficient to establish standing under the UCL.

While Walmart is correct that the majority of UCL "benefit of the bargain" cases require

reliance, this is precisely because the alleged wrongdoing in most instances is premised on a misrepresentation. *See, e.g.*, *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1048-49 (N.D. Cal. 2014) (imposing a reliance requirement on Plaintiffs' UCL claims that are "based on alleged misrepresentations, omissions, and fraudulent conduct by Apple" but not requiring a showing of reliance for other UCL claims based on violations of the Stored Communications Act and the Wiretap Act); *Durell*, 183 Cal. App. 4th at 1363 (imposing an actual reliance requirement given the "predicate unlawfulness is misrepresentation and deception," but noting "[t]here are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application") (quoting *Tobacco II*, 46 Cal. 4th at 325 fn. 17). The court's prior order similarly imposed a reliance requirement given the UCL claim from the original Complaint was premised on Walmart's alleged misrepresentation. Because the FAC now bases the UCL claims on a breach of contract rather than a misrepresentation, however, actual reliance is not required. *Svenson*, 2015 WL 1503429, at *9-10.

Walmart's attempts to distinguish *Svenson* and *Anthem* on their facts likewise miss the mark. First, Plaintiffs' decision not to include a separate, standalone breach of contract claim in their FAC has no bearing on the question of standing under the UCL. Second, just because privacy protections were central to the bargains in *Svenson* (involving sensitive banking information) and *Anthem* (involving personal health information), it does not follow that privacy was unimportant to Plaintiffs in these transactions. Presumably, the State of California would not have enacted Section 22576 were a company's fidelity to its own privacy policies not important to consumers. Just as in *Svenson* and *Anthem*, therefore, Plaintiffs' purchases entitled them to the bundle of goods, services, and rights set forth in their purchase contract, which in this case included the privacy protections Walmart allegedly violated. If those terms were in fact breached, as Plaintiffs have alleged, this can support a claim under the UCL. Lastly, the fact that no subset of the purchase prices for video media was earmarked for privacy protections is not fatal to the economic injury requirement. *In re Anthem*, 2016 WL 3029783, at *13. Just as in *Anthem*, Walmart should not be able to evade liability because it "did not provide, in advance, a

breakdown" of what portion of the purchase price was allocated, or should have been allocated, to Walmart's compliance with its privacy policy—namely only sharing customer purchase histories with third parties for customers who opted in.  *Id.* at *14.  Therefore, both economic injury and causation are satisfied under a benefit of the bargain theory, so long as Plaintiffs adequately pled that Walmart breached its privacy policy.

### B.  Walmart's Privacy Policy

Walmart's Terms of Use expressly incorporate Walmart's Privacy Policy.  When Plaintiffs made the purchases at issue, Walmart's Privacy Policy stated in relevant part:

**Marketing Preferences**

When we are sending marketing communications to you, we use the following standards:

- We use an opt-in standard for phone and text messages.  *We use an opt-in standard for sharing personal information with companies outside our corporate family of companies for their use in direct marketing, such as sending you promotions.  Opt-in means we will only conduct the activity with your affirmative consent.*

- We use an opt-out standard for email or for other communications, such as postal mail.  Opt-out means we may contact you, but will stop upon your request (as described below).

(FAC ¶ 23 (emphasis added).)  Because walmart.com customers assented to Walmart's Terms of Use as a condition of purchase, this provision of the Privacy Policy constitutes part of the contractual bargain between Plaintiffs and Walmart for the video media purchases at issue.

Plaintiffs in the FAC allege Walmart violated the express terms of the Privacy Policy by systematically sharing customers' personal information with Facebook, "for Facebook's use in direct marketing (i.e. for Facebook to provide direct marketing services to Walmart)" without requiring that customers first opt in to such disclosure.  (FAC ¶ 24.)

According to Walmart, Plaintiffs misread the policy in two respects.  First, Walmart argues "for their use in direct marketing" refers to third parties' use of personal information for that third parties' own direct marketing to consumers.  In contrast, Plaintiffs argue the phrase encompasses "any situation where Walmart shares personal information with an outside company to use in direct marketing, regardless of whether it's to directly market the outside company's products,

1   Walmart's products, or a third party's products."  Second, Walmart argues the first sentence of the

2   bullet point limits the entire provision to marketing sent in the form of "phone or text messages."

3   In response, Plaintiffs argue that despite being within the same bullet point, the two sentences "are

4   grammatically distinct, cover different topics, and function independently of each other," such that

5   the phrase outlining the privacy policy for third parties is not confined to phone and text messages.

6   (Dkt. 44 at 10-11.)

7        Walmart's Terms of Use make clear that California law governs the interpretation of its

8   provisions, including the Privacy Policy incorporated therein.  Under California law, "[a] contract

9   must be so interpreted as to give effect to the mutual intention of the parties as it existed at the

10  time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636.  The

11  intent of the parties should be gleaned "solely from the written contract if possible." *GGIS Ins.*

12  *Servs., Inc. v. Superior Court*, 168 Cal. App. 4th 1493, 1506 (2008); *see* Cal. Civ. Code, §§ 1639,

13  1647. California law further provides that "[t]he whole of a contract is to be taken together, so as

14  to give effect to every part, if reasonably practicable, each clause helping to interpret the other."

15  Cal. Civ. Code § 1641.  "A contract provision will be considered ambiguous when it is capable of

16  two or more reasonable interpretations." *Reyes v. Nationstar Mortg. LLC*, No. 15-cv-01109-LHK,

17  2015 WL 4554377, at *4 (N.D. Cal. July 28, 2015); *accord CNH Indus. N.V. v. Reese*, 138 S. Ct.

18  761, 765 (2018).  "Where the terms of a contract are ambiguous, resolution of contractual claims

19  on a motion to dismiss is improper." *Reyes*, 2015 WL 4554377, at *4.

20       Even when read holistically, the Marketing Preferences section of Walmart's Privacy

21  Policy is ambiguous.  Despite being contained in a single bullet point, it is unclear whether the

22  opt-in standard for sharing personal information is qualified by the preceding sentence for "phone

23  and text messages" or rather is independent but lumped together simply because both categories

24  are governed by an opt-in standard.  Plaintiffs' interpretation that the opt-in standard for sharing

25  personal information applies to messaging beyond just phone and text messages is reasonable.

26  Second, the phrase "for their use in direct marketing" does not foreclose Plaintiffs'

27  interpretation—namely that an opt-in standard would apply to Walmart's disclosure of personal

28       ORDER DENYING MOTION TO DISMISS CERTAIN CLAIMS
CASE NO. 18-cv-06678-RS

information to Facebook for Facebook's use in providing direct marketing services to Walmart.

Under Plaintiffs' reasonable interpretation of the ambiguous provision, therefore, Walmart's alleged disclosure of Plaintiffs' video media purchase information to Facebook constituted a breach of the contractual terms governing the bargain. Under the benefit of the bargain logic espoused in both *Anthem* and *Svenson* and endorsed above, Plaintiffs have sufficiently alleged economic injury for purposes of the UCL standing.

### D. Plaintiffs' Claim Under the "Unlawful" Prong

By proscribing "any unlawful" business act or practice, the UCL "borrows" violations of other laws and treats them as unlawful practices that the UCL makes independently actionable. *Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390, 396 (2013). In borrowing requirements from other statutes, the UCL provides its own "distinct and limited equitable remedies for unlawful business practices, using other laws only to define what is 'unlawful.'" *Id.* at 397.

As noted above, Plaintiffs aver that Walmart's breach of its Privacy Policy constituted a violation of Section 22576, which prohibits a commercial website operator from "knowingly and willfully" or "negligently and materially" failing to comply with the provisions of its posted privacy policy. By alleging that Walmart shared Plaintiffs' and class members' video media purchase information with Facebook for direct marketing, Plaintiffs adequately pled a violation of Section 22576, which is sufficient to state a UCL claim under the unlawful prong. *See Svenson*, 2015 WL 1503429, at *9.

### C. Plaintiffs' Claim Under the "Unfair" Prong

The "unfair" prong of the UCL creates a cause of action for a business practice that is unfair even if not proscribed by some other law. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). "The UCL does not define the term 'unfair' . . . [and] the proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts." *Id.*

Some California courts apply a balancing test, which requires courts to "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC*

*Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (internal quotation marks omitted). Other California courts apply a "tethering" test, under which the "unfairness must be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (internal quotation marks omitted).[4]

At this stage of the proceedings, Plaintiffs' allegations are sufficient to state a claim under the "unfair" prong of the UCL under either test. Under the balancing test, the California Courts of Appeal have stated that "an unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, (2006) (internal quotation marks omitted) (emphasis added). Assuming Walmart did systematically breach its Privacy Policy given the ambiguity outlined above, this practice contravenes California's well-established public policy of protecting consumer data, as reflected in Section 22576 and other statutes. District courts have found similar allegations sufficient to plead "unfair" conduct under the balancing test. *See, e.g.*, *Svenson*, 2015 WL 1503429 at *10; *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *24 (N.D. Cal. Aug. 30, 2017).

Applying the "tethering" test yields the same result. Plaintiffs' unfair-prong claim is tethered to the United States' and California's policy for protecting the privacy of video media purchasers. *See, e.g.*, VPPA, 18 U.S.C. § 2710; Cal. Civ. Code § 1799.3. More broadly, the claim aligns with California's policy of protecting customer data generally and holding companies accountable to their own privacy policies, as reflected in Section 22576. Plaintiffs' allegations therefore adequately plead a UCL claim under the "unfair" prong.

---

[4] In addition, one California court borrowed the three-part test set forth in § 5 of the Federal Trade Commission Act and applied it to the UCL "unfair" prong context. *See Camacho v. Auto. Club of Southern Cal.*, 142 Cal. App. 4th 1394, 1403 (2006). This test has not been widely adopted in the UCL context, however, nor did the parties' briefing address this minority test, so only the more common "balancing" and "tethering" tests are addressed here.

## V.  CONCLUSION

For the foregoing reasons, Walmart's motion to dismiss certain claims is denied.  Plaintiffs have adequately alleged violations of the UCL under both the "unfair" and "unlawful" prongs.

**IT IS SO ORDERED**.

Dated:  August 26, 2019

RICHARD SEEBORG
United States District Judge